IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: RADNOR HOLDINGS CORPORATION, et al. | ) |
| | ) |
| RADNOR HOLDINGS CORPORATION, et al. | ) |
| Debtors, | ) |
| | ) |
| and | ) Case No. 06-10894 (PJW) |
| | ) (Jointly Administered) |
| MICHAEL T. KENNEDY, MTK TRUST FBO RYAN | ) |
| KENNEDY, MTK TRUST FBO SEAN M. KENNEDY, MTK | ) |
| TRUST FBO MICHAELA C. KENNEDY, MTK TRUST FBO | ) |
| CONNOR R. KENNEDY | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. No. 12-51308 (PJW) |
| | ) |
| SKADDEN ARPS MEAGER & FLOM LLP; SK PRIVATE | ) |
| INVESTMENT FUND 1998 LLC; RICHARD T. PRINS, | ) |
| ESQUIRE; GREGG M. GALARDI, ESQUIRE; | ) |
| TENNENBAUM & CO. LLC; TENNENBAUM CAPITAL | ) |
| PARTNERS, LLC; BABSON & CO. LLC; SPECIAL | ) |
| VALUE EXPANSION FUND, LLC; SPECIAL VALUE | ) |
| OPPORTUNITIES FUND, LLC; MICHAEL E. | ) |
| TENNENBAUM; SUZANNE S. TENNENBAUM; DAVID A. | ) |
| HOLLANDER; MARK K. HOLDSWORTH; HOWARD M. | ) |
| LEVKOWITZ; RICHARD E. SPENCER; JOSE | ) |
| FELICIANO; ALVEREZ & MARSAL, INC. and | ) |
| STANFORD M. SPRINGEL | ) |
| | ) |
| Defendants. | ) |
| | ) |

## OPENING BRIEF IN SUPPORT OF TENNENBAUM
## PARTIES' MOTION FOR SANCTIONS AGAINST MICHAEL KENNEDY

| | |
|---|---|
| | Russell C. Silberglied (No. 3462) |
| | Cory D. Kandestin (No. 5025) |
| | RICHARDS, LAYTON & FINGER, P.A. |
| | One Rodney Square |
| | 920 North King Street |
| | Wilmington, DE 19801 |
| | Telephone:     (302) 651-7700 |

RLF1 8916407v.2

| | silberglied@rlf.com<br>kandestin@rlf.com |
|---|---|
| Dated:  August 26, 2013 | *Counsel to Tennenbaum Capital Partners, LLC, Tennenbaum & Co. LLC, Special Value Expansion Fund, LLC, Special Value Opportunities Fund, LLC, Michael E. Tennenbaum, Suzanne S. Tennenbaum, David A. Hollander, Mark K. Holdsworth, and Howard M. Levkowitz.* |

# TABLE OF CONTENTS

                                                                                                        **Page**

INTRODUCTION ...................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ......................................................................2

SUMMARY OF ARGUMENT ..............................................................................................3

BACKGROUND .....................................................................................................................4

    A. Skadden is retained and objections to its retention are overruled ......................................4

    B. WilmerHale is retained as special counsel to conduct
       investigation of Tennenbaum .........................................................................................5

    C. Committee sues Tennenbaum alleging "loan to own"
       scheme; Court holds Tennenbaum engaged in no improper conduct ..............................5

    D. Court approves sale to Tennenbaum; Sale Order contains
       findings of good faith and APA contains release in favor of Tennenbaum. ...................6

    E. Kennedy tries and fails to escape his guaranty in New York
       federal court by arguing that Tennenbaum acted inequitably and in bad faith ...............8

    F. Kennedy requests—and receives—ample time to raise his
       allegations in opposition to plan confirmation, but he then fails to raise them ...............10

    G. Kennedy's Amended Complaint .....................................................................................11

    H. Court rules against Kennedy on his (1) motion to set aside
       Sale Order and (2) objection to Skadden's fees. .............................................................12

    I. Kennedy refuses to withdraw complaint or avail himself of Rule 11 safeharbor ............13

RLF1 8916407v.2

## TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................14

I.  Kennedy Violated Bankruptcy Rule 9011 By Filing A Pleading That
He Knew Or Should Have Known Asserted Claims That Are
Time-Barred, Released, And Barred By Previous Court Findings......................................14

II. Alternatively, Kennedy Should Be Sanctioned For Unreasonably
Multiplying Proceedings That Should Have Ended With The
Committee Litigation...................................................................................................21

SANCTIONS REQUESTED.........................................................................................23

CONCLUSION...............................................................................................................23

RLF1 8916407v.2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atlantis Plastics Corp. v. Sammons,*
    558 A.2d 1062 (Del. Ch. 1989)................................................................16

*Began v. Dixon,*
    547 A.2d 620 (Del. Super. 1988).............................................................16

*Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.,*
    999 F.2d 745 (3d Cir. 1993)....................................................................14

*Clarkson v. Goldstein,*
    2007 WL 914635 (Del. Super. Feb. 28, 2007)........................................16

*Claybrook v. AutoZone Texas, L.P. (In re Am. Remanufacturers, Inc.),*
    453 B.R. 235 (Bankr. D. Del. 2011) .......................................................22

*Cramer v. General Telephone & Electronics Corp.,*
    582 F.2d 259 (3d Cir. 1978)....................................................................17

*Davey v. Dolan,*
    453 F. Supp. 2d 749 (S.D.N.Y. 2006).....................................................21

*Florance v. Buchmeyer,*
    500 F. Supp. 2d 618 (N.D. Tex. 2007) ...................................................18

*GRT, Inc. v. Marathon GTF Technology, Ltd.,*
    2011 WL 2682898 (Del. Ch. July 11, 2011)...........................................16

*Institute for Motivational Living, Inc. v. Doulos Institute for Strategic Consulting, Inc.,*
    110 F. App'x 283 (3d Cir. 2004) .............................................................21

*Landon v. Hunt,*
    977 F.2d 829 (3d Cir. 1992)....................................................................14

*Lewis v. Smith,*
    480 F. App'x 696 (3d Cir. 2012) .............................................................22

*Martin v. Farmers First Bank,*
    151 F.R.D. 44 (E.D. Pa. 1993)................................................................15

*Morales v. U.S,*
    961 F. Supp. 633 (S.D.N.Y. 1997) .........................................................16

RLF1 8916407v.2

*Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers,*
    855 F.2d 1080 (3d Cir. 1988)..........................................................................14, 15

*Official Committee of Unsecured Creditors v. Tennenbaum Capital Partners LLC (In re*
    *Radnor Holdings Corp.),*
    353 B.R. 820 (Bankr. D. Del. 2006) ........................................................ passim

*In re Olick,*
    498 F. App'x 153 (3d Cir. Sept. 21, 2012) ....................................................14, 15

*Peltz v. Worldnet Corp. (In re USN Commc'ns, Inc.),*
    280 B.R. 573 (Bankr. D. Del. 2002) ..............................................................19, 20

*Tennenbaum Capital Partners, LLC v. Kennedy,*
    2009 WL 2913679 (S.D.N.Y. Sept. 11, 2009)..................................................9, 10

*Tennenbaum Capital Partners, LLC v. Kennedy,*
    372 Fed. App'x 180 (2d Cir. 2010)......................................................................9

*Upadhyay v. Burse (In re Burse),*
    120 B.R. 833 (Bankr. E.D. Va. 1990)....................................................................14

*Vichi v. Koninklijke Philips Electronics N.V.,*
    2009 WL 4345724 (Del. Ch. Dec. 1, 2009).....................................................15, 16

*Wages v. IRS,*
    915 F.2d 1230 (9th Cir. 1990) ............................................................................21

*WaveDivision Holdings, LLC v. Highland Capital Management L.P.,*
    2010 WL 1267126 (Del. Ch. Mar. 31, 2010)........................................................16

## STATUTES & RULES

11 U.S.C. § 363(m)...........................................................................................7, 17

18 U.S.C. § 1621...................................................................................................18

18 U.S.C. § 3282(a) ..............................................................................................16

28 U.S.C. § 1927..........................................................................................4, 21, 22

Fed. R. Bankr. P. 9011 ................................................................................. passim

Fed. R. Civ. P. 11 ......................................................................................... passim

RLF1 8916407v.2

## INTRODUCTION[1]

Michael Kennedy is Radnor's former CEO, chairman of the board, and majority shareholder, and he is or was a lawyer to boot. He actively participated in Radnor's bankruptcy proceedings, and personally testified at trial in the litigation that Radnor's creditors' committee brought against Tennenbaum and Jose Feliciano in late 2006. He commenced this adversary proceeding in December 2012 by filing a complaint, and by signing it he certified under Rule 9011 that he made a reasonable inquiry to determine that it had a valid legal and factual basis.

But the complaint suffers from fatal defects so obvious that Kennedy either did not make a reasonable inquiry, or if he did, he knew that his complaint was frivolous but closed his eyes and proceeded anyway. To list a few:

- Every single cause of action in the complaint is time barred.

- The Court's post-trial opinion in the 2006 committee litigation resolved the same issues, so the complaint is barred under the doctrines of res judicata, collateral estoppel, and law of the case.

- The post-trial sale order also approved a comprehensive release in favor of Tennenbaum and its affiliates, which released the very claims Kennedy now tries to assert.

- Kennedy purports to bring claims on behalf of Radnor, but he has no standing to do so.

- Kennedy said he would assert his claims as an objection to confirmation but failed to do so despite being given multiple extensions, so his claims are waived.

- Kennedy's claims are based on factual incoherencies that contradict even the very evidence he cites, as the Court found in a post-hearing opinion after considering the identical allegations in Kennedy's objection to Skadden Arps' final fee application.

Faced with all these deficiencies and outright legal bars to his complaint, Kennedy must know or should know that his complaint is meritless.

---

[1] Capitalized terms not defined herein have the meaning defined below.

But then why did he file it, and why so late? The timing is no coincidence: Tennenbaum currently is enforcing a judgment that it obtained against Kennedy on his guaranty, and Kennedy is obstructing Tennenbaum's collection efforts. Kennedy's commencement of this adversary proceeding now (and his filing of similar pleadings in the main bankruptcy case) are attempts to gain leverage that should not be countenanced.[2]    Because Kennedy has filed a patently unreasonable complaint causing the Tennenbaum Parties to spend significant fees, he should be sanctioned under Rule 11.

## NATURE AND STAGE OF PROCEEDINGS

On November 17, 2006, after conducting an eight-day trial, the Court entered its opinion in *Official Committee of Unsecured Creditors v. Tennenbaum Capital Partners LLC (In re Radnor Holdings Corp.)*, 353 B.R. 820 (Bankr. D. Del. 2006). Four days later, the Court approved the sale of substantially all of Radnor's assets to a Tennenbaum[3] affiliate (the "Sale Order"). [Main Case D.I. 698].

Over six years later, on December 26, 2012, Kennedy filed his complaint, which he amended in February 2013. [D.I. 1, amended at D.I. 6]. The same day that he filed his original complaint, Kennedy also filed a motion in Radnor's main bankruptcy case seeking two types of relief. [Main Case D.I. 1993]. First, Kennedy sought to set aside the Sale Order that the Court entered in 2006. *Id.* Second, Kennedy objected to the final fee application of Skadden Arps Slate Meagher & Flom, who acted as debtors' counsel in these cases. *Id.*

---

[2] This strategy is perhaps at its most obvious by the fact that the complaint names as a defendant Suzanne Tennenbaum, the wife of Tennenbaum Capital's founder, Michael Tennenbaum. Even Mr. Tennenbaum has no relationship to this case, let alone his wife. Naming his wife as a defendant simply is a transparent attempt at harassment. Rule 9011 does not permit such irresponsible behavior.

[3] For convenience's sake, the term "Tennenbaum" refers generally to Tennenbaum Capital Partners, LLC and its affiliates who are defendants in this case.

By Court order, the parties' deadline to respond to the complaint has been tolled pending the resolution of Kennedy's motion in the main bankruptcy case. [D.I. 24]. On April 16, 2013, this Court ruled that Kennedy's request to set aside the Sale Order was time barred. [Main Case D.I. 2032]. Kennedy did not appeal that ruling. On June 20, 2013, after conducting a two-day evidentiary hearing, the Court overruled Kennedy's objection to Skadden's final fee application [Main Case D.I. 2076]. Kennedy has appealed this latter ruling. [Main Case D.I. 2078].

By letter dated July 10, 2013, Tennenbaum asked Kennedy to withdraw his complaint and notified him that if he refused, then Tennenbaum would have no choice but to file a motion for sanctions. Kennedy has not withdrawn his complaint, and this motion followed.

## SUMMARY OF ARGUMENT

1.     Sanctions are appropriate under Bankruptcy Rule 9011 for commencing and refusing to withdraw this frivolous litigation. Under Rule 9011, any party signing a pleading has an affirmative duty to inquire into both the facts and the law to confirm that the pleading is not frivolous and has evidentiary support. The test is objective and focuses on the reasonableness of the pleading rather than on subjective bad faith. If a party files a pleading that is patently unreasonable, such as a pleading suffering from obvious legal bars, then Rule 9011 relief is warranted. Here, Kennedy filed a pleading that: (a) is time-barred; (b) is precluded by prior Court findings; (c) is barred by the Sale Order's release; (d) he lacks standing to bring; (e) should have been filed, if at all, as an objection to confirmation, but never was; and (f) relies on evidence that *disproves* its claims. Any reasonable person inquiring into the facts and law would uncover these defects, so Kennedy's decision to file demonstrates that he either made no inquiry, or that he recklessly ignored these obvious deficiencies. Either way, Rule 9011 was violated. Further, while Kennedy's subjective motivation for filing the complaint is irrelevant, the timing

RLF1 8916407v.2

of his filing suggests that it was a response to Tennenbaum's collection action against him, and was not based on a genuine belief that all of Radnor's professionals engaged in a grand conspiracy with Tennenbaum.

2.     Alternatively, sanctions are appropriate for unreasonably multiplying these proceedings. 28 U.S.C. § 1927 authorizes sanctions on attorneys who "unreasonably and vexatiously" multiply the proceedings. While there is some disagreement on whether the statue applies to pro se parties who are themselves attorneys, the Third Circuit has held that trial courts can impose identical sanctions on non-lawyer pro se parties under their inherent powers. For the same reasons as above, sanctions are warranted against Kennedy. By commencing this proceeding, Kennedy has multiplied litigation that should have ended with this Court's published opinion dismissing the creditors' committee litigation in 2006.

## BACKGROUND

For brevity's sake, Tennenbaum incorporates by reference its *Objection to Michael Kennedy's Motion to Set Aside Sale Order* [Main Case D.I. 2018] (the "Objection"), filed on March 15, 2013, which sets forth in more detail the lengthy chronology of this case (copy attached hereto as Exhibit 1). The remainder of this "Background" section highlights those facts specifically supporting sanctions.

### A.     Skadden is retained and objections to its retention are overruled

On August 21, 2006, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Four days later, Skadden moved for approval of its retention as debtors' counsel. [Main Case D.I. 96, 223]. Skadden had previously performed work for Tennenbaum in unrelated matters representing 0.027% of Skadden's time billed for all matters in the trailing twelve months. *See* Objection ¶ 8; Supplement to Declaration of Gregg M. Galardi [Main Case D.I. 223], at ¶¶ 5, 10.

4

The U.S. Trustee objected to Skadden's retention on the basis that Skadden held a conflict of interest. After oral argument, this Court overruled the objection. The Court noted that Skadden's relationship with Tennenbaum was not significant, and that the creditors' committee and the independent counsel representing Radnor's special committee both were actively involved in the case such that Skadden could not have favored Tennenbaum's interest even if it hypothetically wanted to. *See* Sept. 20 2006 Tr. at p. 60-62 [D.I. 298] (relevant pages attached hereto as Exhibit 2); Objection ¶¶ 9-11.

B.    **WilmerHale is retained as special counsel to conduct investigation of Tennenbaum**

Prior to the petition date, the debtors' *ad hoc* committee of unsecured noteholders indicated that it may seek to have a creditors' committee in any upcoming bankruptcy case prosecute claims against Tennenbaum. Because Skadden served as counsel for Tennenbaum in other unrelated matters, the debtors authorized their special committee to retain Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") as its special counsel for the purpose of investigating any Tennenbaum-related issues. *See* Objection ¶ 13. WilmerHale was chosen in part because it had no relationship whatsoever with Tennenbaum or with the events leading up to the Debtors' bankruptcy case, and therefore could advise the special committee free of any perceived bias.

C.    **Committee sues Tennenbaum alleging "loan to own" scheme; Court holds Tennenbaum engaged in no improper conduct**

The creditors' committee was appointed in August 2006 and sued Tennenbaum and certain affiliates in October 2006. [Adv. Pro. 06-50909, D.I. 1] (the "Committee Complaint") (attached hereto as Exhibit 3); Objection ¶ 14. At the time, Radnor was pursuing a sale, and Tennenbaum had submitted a stalking horse bid. Like Kennedy alleges now, the Committee contended that Tennenbaum's intent from the outset of its relationship with Radnor was to

5

wrongfully acquire the company at a low price in a bankruptcy sale. Specifically, the Committee alleged the existence of "a purposeful, unlawful, and inequitable scheme by Tennenbaum to acquire the Debtors' operating assets at a grossly inadequate price through the mechanism of a credit bid in bankruptcy." Committee Complaint ¶ 1. The committee's claims depended on this theory just as Kennedy's do.

"The Court conducted eight full days of trial between November 2 and November 14, 2006, heard testimony from fourteen witnesses and admitted 350 documents into evidence." *Official Committee of Unsecured Creditors v. Tennenbaum Capital Partners LLC (In re Radnor Holdings Corp.)*, 353 B.R. 820, 827 (Bankr. D. Del. 2006). After the trial, the Court dismissed the Committee Complaint in its entirety, finding that:

- Tennenbaum had no intent to acquire Radnor at the time of its initial investment or thereafter;

- Tennenbaum was reluctant to submit a stalking horse bid and did so only to prevent a freefall into chapter 7;

- Tennenbaum was not an insider, was not "in control" of Radnor, and did not engage in wrongful conduct;

- Lehman Brothers was not conflicted and did not improperly influence Radnor's behavior; and

- "TCP did *not* engage in misconduct; TCP did *not* seek to benefit itself at the expense of others; TCP did *not* seek to mislead trade creditors, public noteholders or other stakeholders. TCP at all times acted in good faith with a view to maximizing Radnor's value to all constituents." 353 B.R. at 841 (emphasis in original).

*See* 353 B.R. 829-46; Objection ¶ 16 (listing citations from opinion).

   D.    **Court approves sale to Tennenbaum; Sale Order contains findings of good faith and APA contains release in favor of Tennenbaum.**

On November 21, 2006, the Court entered the Sale Order which approved the sale of substantially all of the debtors' assets to TR Acquisition Co., Inc., a newly-created affiliate of

Tennenbaum (the "Sale") [D.I. 698] (copy of Sale Order attached hereto as Exhibit 4). The Sale closed on November 29, 2006. After unsuccessfully moving for a stay pending appeal, the Committee appealed the Sale Order on December 1, 2006, and voluntarily withdrew the appeal in April 2007. [Main Case D.I. 688, 737, 1122].

As consideration for the Sale, among other things, TR Acquisition Co.: (a) paid in cash to National City Business Credit (as agent for a syndicate of lenders) the full amount of the obligations due under the debtors' $103 million DIP facility loan (which included a roll-up of prepetition secured claims in the amount of $63 million); (b) paid in cash approximately $19 million in respect of claims secured by the debtors' real properties; (c) credit bid its prepetition Tranche A and Tranche B secured loans in the amount of $95 million (but did not credit bid its $23.5 million Tranche C secured loan); and (d) advanced additional funds, in cash, to pay for the cost of winding down the estates, including the payment of allowed professional fees.[4] *See generally* Sale Order Ex. 1 (Amended and Restated Asset Purchase Agreement), at § 3.1.

In the Sale Order, the Court found that the Debtors had actively marketed their assets and conducted the Sale in good faith. Sale Order ¶¶ H, L, N, W & 5. The Court specifically found that there was there was no evidence of insider influence or improper conduct by Tennenbaum, and that Tennenbaum had purchased in good faith and was entitled to protection under 11 U.S.C. § 363(m). Sale Order ¶¶ W, 5; Objection ¶ 19.

The Sale Order also included a release in favor of, among others, Tennenbaum and all of its respective officers, directors and employees (including Jose Feliciano, a defendant in this adversary proceeding):

> Each Seller, on behalf of itself, and any Person claiming by, through, under, derivatively for, as agent for or on behalf of such Seller (collectively, the "Seller

---

[4] It bears noting that the cash paid in category (d) enabled creditors of a priority *lower than the Tennenbaum-affiliated secured lenders* to be paid ahead of Tennenbaum's own affiliates.

Group"), acknowledges that it has no claim ... against *(1) any of the Purchaser,
the Tennenbaum Lenders, Tennenbaum Capital Partners, LLC, Tennenbaum &
Co., LLC, and each of their respective managing members, (2) any of their
respective directors, officers, ... employees ... solely in their capacity as such, and
(3) any of their respective directors, officers, ... employees ... in their capacity as
a member on, or arising from their involvement with the activities of, the Board of
Directors of any of the Sellers (including pursuant to board observer rights)...*
(the "Purchaser Group")....

*See* Sale Order Ex. 1 (APA) at § 12.11 (emphasis added).  The debtors released these entities and

persons from all claims whatsoever, including any claims arising from Tennenbaum's

relationship with the debtors:

> [S]hould any Released Claims nonetheless exist, each Seller on behalf of itself
> and all the other members of the Seller Group hereby (1) releases and discharges
> each member of the Purchaser Group from any liability whatsoever on such
> Released Claims that directly or indirectly arise out of, are based upon, or in any
> manner connection with a Prior Event.... *As used herein, the term 'Prior Event'
> means any transaction, event, circumstances, action, failure to act or occurrence
> of any sort or type, including without limitation any approval or acceptance given
> or denied, whether known or unknown, which occurred, existed, was taken,
> permitted or begun prior to the consummation of the Transactions contemplated
> hereunder.  For the avoidance of doubt, 'Prior Events' shall include ... the
> acquisition by any of Tennenbaum Lenders or any other of Purchaser Group of
> equity interests in any of Sellers ... [and] the membership on, and involvement
> with the activities of, the Board of Directors of any of the Sellers (including
> pursuant to board observer rights).*

*Id.* (emphasis added).

### E.    Kennedy tries and fails to escape his guaranty in New York federal court by arguing that Tennenbaum acted inequitably and in bad faith

When Tennenbaum bought Radnor's assets, it credit bid its Tranche A and Tranche B

secured claims, but not its Tranche C claim.  At the time that Tennenbaum made the Tranche C

loan, Kennedy guaranteed repayment of up to $10 million of its principal amount.  Since the

Tranche C loan remained outstanding and unpaid after the Sale, Tennenbaum demanded

payment under Kennedy's guaranty.  Kennedy did not pay, and as a result Tennenbaum filed a

complaint for breach of contract in the United States District Court for the Southern District of New York. *See* Case No. 07-9695 (LTS)(DCF).

Kennedy raised numerous affirmative defenses in his answer to the complaint, including the following:.

- "[Tennenbaum's] claims against Kennedy are barred as a result of [Tennenbaum's] inequitable conduct";

- "[Tennenbaum's] claims against Kennedy are barred because [Tennenbaum] acted in bad faith"; and

- "[Tennenbaum's] claims against Kennedy are barred, in whole or in part, by the doctrine of unjust enrichment."

*See* D.I. 14 at ¶¶ 31, 32, 36 (attached hereto as Exhibit 5).

The district court granted summary judgment to Tennenbaum on its breach of contract claim against Kennedy. *See Tennenbaum Capital Partners, LLC v. Kennedy*, 2009 WL 2913679, at *6 (S.D.N.Y. Sept. 11, 2009). The court entered a judgment in favor of Tennenbaum for $14,394,180. This judgment was upheld on appeal by the Court of Appeals for the Second Circuit. *Tennenbaum Capital Partners, LLC v. Kennedy*, 372 Fed. App'x 180 (2d Cir. 2010). In November 2009, Tennenbaum registered the judgment in Pennsylvania, Kennedy's domicile state. *See* S.D.N.Y. Case. No. 07-9695, D.I. 85 & 103.

Notwithstanding the foregoing, Tennenbaum has not received any payment from Kennedy in respect of his guarantee. Despite the fact that Kennedy received tens of millions of dollars from Radnor in the years leading up to its bankruptcy and maintains a lavish lifestyle, Kennedy has obstructed efforts to locate those assets, resulting in orders for contempt being entered in the ongoing collection action. *See* Exhibit 6 hereto.

9

**F.    Kennedy requests—and receives—ample time to raise his allegations in opposition to plan confirmation, but he then fails to raise them**

On March 15, 2012, the Court held a hearing to consider confirmation of the Debtors' Second Amended Plan of Liquidation ("Plan"). By that date, all objections to the Plan were resolved other than an objection that Kennedy had filed in February 2010, one year after the deadline for filing plan objections. D.I. 1806.[5]  Kennedy's objection was the only remaining issue needing resolution.

At the confirmation hearing, Kennedy's counsel requested that confirmation be delayed so that Kennedy could file another objection to the Plan, this one on the basis that some "impropriety" had occurred. *See* Transcript of Hearing Held on March 15, 2012 at p. 7 [Main Case D.I. 1950]. The Court gave Kennedy thirty days to file a consolidated objection that would supersede his February 2010 objection and that would set forth all of his arguments in one pleading. *Id.* at 21. The Court also authorized the debtors to file the confirmation order under certification of counsel if Kennedy failed to timely file his objection, since all the requirements for confirmation otherwise were met. *Id.*

Instead of filing an objection, on the day of the deadline, Kennedy's counsel sent debtors' counsel a letter requesting a further extension. The letter enclosed a draft pleading that was nearly identical to the complaint that Kennedy eventually filed months later to begin this adversary proceeding. Like the final version of the complaint, the draft contained falsehoods and misstatements of what had happened both prior to and during these bankruptcy cases.

---

[5]  Kennedy's 2010 objection was based on his contention that Tennenbaum had credit bid (or equitably should be deemed to have credit bid) its Tranche C loan. Kennedy later raised substantially the same issues as a defense to Tennenbaum's guaranty action in New York. The New York court found that Kennedy's arguments had no merit and granted summary judgment in TCP's favor. *See Tennenbaum Capital Partners, LLC v. Kennedy*, 2009 WL 2913679, at *6 (S.D.N.Y. Sept. 11, 2009).

Hoping that they could consensually resolve Kennedy's confirmation concerns and/or educate his counsel, the debtors agreed to an extension. *See Debtors' Objection to Motion to Michael T. Kennedy to Extend Time to Object to Confirmation* [D.I. 1966] at ¶ 2(e) (attached hereto as Exhibit 7). Debtors' counsel encouraged Kennedy to provide any documents supporting his draft objection, and met with Kennedy's counsel in person on May 2, 2012 to discuss the draft objection. *Id.* at ¶ 2(g). After that meeting, Kennedy's counsel provided additional documents for debtors' counsel to review. *Id.* On May 24, debtors' counsel spoke with Kennedy's counsel and explained why Kennedy's draft objection was without merit. *Id.* at ¶ 2(h). In short, the numerous inaccuracies and false assertions in the draft objection fell far below of the basic requirements of Bankruptcy Rule 9011, and these defects were pointed out to Kennedy's counsel at the meetings. Kennedy's counsel never filed the draft pleading.

Instead, the day before the new extended deadline for objecting to the Plan—now three months after the original deadline—Kennedy's counsel filed a motion seeking *another* extension of time, purportedly so that Kennedy could find new counsel. *See* D.I. 1964. The implication was obvious: former counsel refused to file a pleading that did not meet Rule 9011, so new counsel that was ignorant of the facts of this case, or reckless, was being sought to file the objection. On July 25, the Court denied the extension request. *See* D.I. 1969.

The Debtors waited another two months before filing the confirmation order under certification of counsel, yet Kennedy did not file his objection or obtain new counsel. The Court confirmed the Plan in September 2012. *See* D.I. 1976.

G.    **Kennedy's Amended Complaint**

On December 26, 2012, Kennedy—now acting pro se—filed a complaint nearly verbatim to the one he submitted as a draft objection to the Plan (as subsequently amended, the "Amended Complaint") [D.I. 1 & 6].

11

In a nutshell, Kennedy alleges that he has discovered evidence demonstrating that Skadden, Tennenbaum, and the debtors' other professionals (Lehman Brothers and Alvarez & Marsal) conspired to manipulate the debtors' restructuring. *See, e.g.*, Amended Complaint ¶¶ 24-26. The "new evidence" centers around the pre-petition relationships between the debtors, Tennenbaum, and the various professional firms. Based on these relationships, Kennedy concludes that Tennenbaum selected Skadden to represent the debtors (while hiding from Kennedy the fact that Tennenbaum was a client of Skadden), so that the two could "orchestrate a sale of Radnor's assets to the exclusive benefit of the Tennenbaum defendants." *Id.* ¶ 30. Kennedy asks that the Court grant him $300 million in damages, void the Sale, and award punitive damages. *Id.*, prayer clause (p. 77).

Kennedy verified his complaint by attaching a signed declaration stating that "the facts set forth in the forgoing complaint are true and correct to the best of my knowledge, information and/or belief. I make this statement with the understanding that I am subject to penalties under the Rules of Civil Procedure should it be determined that any of the foregoing facts are knowingly false." *Id.* p. 78.

### H. Court rules against Kennedy on his (1) motion to set aside Sale Order and (2) objection to Skadden's fees.

As noted, the same day that Kennedy filed his original complaint, he also filed a motion in the main bankruptcy case seeking to set aside the Sale Order and objecting to Skadden's final fee application. [D.I. 1993]. On April 16, 2013, the Court denied Kennedy's motion to set aside the Sale Order, holding that the motion was time barred. [Main Case D.I. 2032]. Kennedy did not appeal the Court's ruling.

On May 1 and 2, 2013, the Court held evidentiary hearings on Kennedy's objection to Skadden's final fee application. [Main Case D.I. 2053, 2063]. By Memorandum Opinion dated

12

June 20, 2013, the Court overruled the objection [Main Case D.I. 2076]. Kennedy has appealed that ruling. [Main Case D.I. 2078].

I.    **Kennedy refuses to withdraw complaint or avail himself of Rule 11 safe harbor**

On July 10, 2013, Tennenbaum's counsel sent Kennedy a letter explaining that his complaint suffered from case-dispositive defects and that Tennenbaum would move for sanctions if Kennedy did not withdraw his Amended Complaint within seven days (copy of letter attached hereto as Exhibit 8). Kennedy did not withdraw his complaint, and instead sent a letter stating that he was appealing the Court's opinion overruling his objection to Skadden's fee application, and that he considered the adversary proceeding to be stayed (copy attached hereto as Exhibit 9).

Of course, there is no such stay; there only is an order confirming that the Tennenbaum Parties need not answer at this time. Moreover, Kennedy has not appealed the Court's order denying his request to set aside the Sale Order, nor has he explained how his Amended Complaint is not barred by the Sale's release or by the Court's findings in the 2006 committee litigation. Neither of these orders are under appeal, and they dispositively render Kennedy's complaint legally untenable.

After receiving Kennedy's letter, Tennenbaum sent a follow-up letter reaffirming that unless Kennedy withdrew the Amended Complaint, Tennenbaum would proceed with its request for sanctions (copy of letter attached hereto as Exhibit 10).

Kennedy never withdrew his Amended Complaint, so on July 22, Tennenbaum served Kennedy with this motion for sanctions (copy of letter transmitting motion attached hereto as Exhibit 11). In compliance with Fed. R. Bankr. P. 9011(c)(1)(A), Tennenbaum waited until 21 days after service to file this motion with the Court.

RLF1 8916407v.2

## ARGUMENT

**I.    Kennedy Violated Bankruptcy Rule 9011 By Filing A Pleading That He Knew Or Should Have Known Asserted Claims That Are Time-Barred, Released, And Barred By Previous Court Findings**

Bankruptcy Rule 9011 tracks Federal Rule 11, and case law interpreting the latter is applicable to the former. *Landon v. Hunt*, 977 F.2d 829, 833 n.3 (3d Cir. 1992). "Rule 11 imposes on any party who signs a document submitted to the court an affirmative duty to conduct a reasonable inquiry into the facts and law before filing." *Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc.*, 999 F.2d 745, 751 (3d Cir. 1993). A person signing a motion certifies, to the best of the person's knowledge after making reasonable inquiry, that (1) the motion is not being presented for an improper purpose such as harassment or delay, (2) the motion is not frivolous, and (3) the motion's factual contentions have evidentiary support. Fed. R. Bankr. P. 9011(b)(1)-(3). Rule 9011 applies to pro se parties just as it does to lawyers. *See, e.g.*, *Upadhyay v. Burse (In re Burse)*, 120 B.R. 833, 837 (Bankr. E.D. Va. 1990) ("The pro se litigant has the same duties under Rule 9011 as an attorney."); *In re Olick*, 498 F. App'x 153, 159-60 (3d Cir. Sept. 21, 2012) (affirming sanction of pro se party under Rule 9011).

Rule 11 (and hence Rule 9011) is governed by an objective standard. *Bradgate Assocs.*, 999 F.2d at 752. "We have consistently noted that the Rule 11 test is now an objective one of reasonableness which seeks to discourage pleadings without factual foundation, even though the paper was not filed in subjective bad faith." *Id.* (citations omitted). Rule 11's "fundamental objective" is "to encourage the filing of documents that are well-grounded in both law and fact." *Id.* Accordingly, "[t]o satisfy the affirmative duty imposed by Rule 11, an attorney must inquire into both the facts and the law before filing papers with the court." *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988). A litigant must "stop, think, investigate and research before initiating a lawsuit or filing a paper."

14

*Martin v. Farmers First Bank*, 151 F.R.D. 44, 47 (E.D. Pa. 1993) (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987)).

Pleadings suffering from apparent defects, such as those plainly barred by a statute of limitations, achieve the level of objective unreasonableness sufficient to warrant Rule 11 relief. For example, in *Napier*, the Third Circuit found that the filing of "a claim clearly precluded by the statute of limitations and identical to at least one, and possibly two, other claims already adjudicated on [plaintiff's] behalf was legally frivolous." *Napier*, 855 F.2d at 1091. Likewise, claims that are barred under doctrines of preclusion like res judicata are frivolous and therefore sanctionable. *See, e.g., In re Olick*, 498 F. App'x at 159 ("We see nothing amiss in the imposition of sanctions based on a violation of res judicata, nor in the procedure utilized by the Bankruptcy Court pursuant to Fed. R. Bank. P. 9011").

Kennedy has violated his duty of reasonable inquiry by filing an Amended Complaint that he knows or should know is frivolous, as would have been apparent had he complied with his duty. There are six reasons why:

First, every single cause of action is barred by the statute of limitations. The Amended Complaint revolves around Tennenbaum's purported wrongdoing leading up to Radnor's bankruptcy sale. The Sale closed in November 2006, and the allegedly wrongful acts took place before then. Kennedy filed his original complaint in December 2012, over six years later. None of his causes of action can reach back over six years:

| Count | Cause of Action | Statute of Limitations |
|-------|-----------------|------------------------|
| 1 | Breach of Fiduciary Duty | **3 years**. *Vichi v. Koninklijke Philips Electronics N.V.*, 2009 WL 4345724, at *15 (Del. Ch. Dec. 1, 2009) (citing 10 <u>Del. C.</u> § 8106(a)). |
| 2 | Fraud | **3 years**. *Id.* |

15

| 3 | Conspiracy | **3 years**. *Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1064 (Del. Ch. 1989). |
|---|---|---|
| 4 | Malpractice | **3 years**. *Began v. Dixon*, 547 A.2d 620, 623 (Del. Super. 1988). |
| 5 | Perjury | **5 years**. 18 U.S.C. § 3282(a). |
| 6 | Unjust Enrichment | **3 years**. *Koninklijke Philips*, 2009 WL 4345724, at *15. |
| 7 | Obstruction of Justice | **5 years**. *Morales v. U.S*, 961 F. Supp. 633, 638 (S.D.N.Y. 1997). |
| 8 | Breach of Contract | **3 years**. *GRT, Inc. v. Marathon GTF Technology, Ltd.*, 2011 WL 2682898, at *6 (Del. Ch. July 11, 2011). |
| 9 | Tortious interference | **3 years**. *WaveDivision Holdings, LLC v. Highland Capital Management L.P.*, 2010 WL 1267126, at *4 (Del. Ch. Mar. 31, 2010). |
| 10 | Theft by Deception | Delaware law does not seem to recognize a cause of action by this name, but to the extent it is akin to conversion or fraud, the statute of limitations is **3 years**. *Clarkson v. Goldstein*, 2007 WL 914635, at *4 (Del. Super. Feb. 28, 2007) ("Plaintiffs' claims for common law fraud, conversion, and violations of the DPTPA are subject to the 3-year statute of limitations"). |

Not a single cause of action is timely.

Second, Kennedy's Amended Complaint is precluded by the Court's findings in the 2006 committee litigation and in the Sale Order. The Amended Complaint's centerpiece allegation is that Tennenbaum purportedly conspired to preordain a bankruptcy sale so that it could inequitably enrich itself. But this also was a central issue in the litigation that the creditors' committee brought on behalf of the estate in 2006 (*see supra* pp. 5-6), and the same theory that the Court rejected in its reported opinion. *See* 353 B.R. at 829 ("Mr. Feliciano testified that TCP did not plan to acquire the Debtors at the time that TCP made the initial investment in the

Debtors, nor at any time thereafter. There is no reliable evidence to the contrary.").[6]  The Court

also found in its Sale Order that Tennenbaum did not engage in any misconduct in connection

with the Sale and acted in good faith:

- "There was no evidence of insider influence or improper conduct by Purchaser or any of
  its affiliates in connection with the negotiation of the Purchase Agreement with the
  Debtors.... There was also no evidence of fraud or collusion ... between the Debtors and
  Purchaser or its affiliates to the detriment of any other bidders." Sale Order ¶ W.

- "The Transactions are undertaken by the Purchaser in good faith, Purchaser is a purchaser
  in good faith of the Purchased Assets as that term is used in Section 363(m) of the
  Bankruptcy Code, and Purchaser is entitled to all the protections of Section 363(m) of the
  Bankruptcy Code." *Id.* ¶ 5.

- Tennenbaum's offer was the "highest and best offer received by the Debtors" after "the
  Debtors actively marketed the Purchased Assets." *Id.* ¶¶ H, R.

- "The consideration provided by the Purchaser ... is fair and reasonable and shall be
  deemed for all purposes to constitute Value under the Bankruptcy Code...." *Id.* ¶ 4.

The Court's findings in its post-trial opinion and Sale Order have preclusive effect.  In

both of these final orders, the Court decided the propriety of the Sale and of Tennenbaum's

actions leading up to the Sale. *See supra* pp. 5-7. These are the same issues that underpin the

Amended Complaint. Whether under the rubric of res judicata, collateral estoppel, or law of the

case, there can be no doubt that this is an issue that was decided and settled years ago in this

case, and that Kennedy is precluded from re-litigating now.[7]

---

[6] Kennedy also alleges conflicts between Lehman Brothers and Tennenbaum. *See, e.g.,* Amended
Complaint ¶¶ 102, 109. But in its Opinion, the Court specifically held—after hearing testimony from
Lehman—that Lehman's retention was proper even in light of its prior relationship with TCP. *Radnor*,
353 B.R. at 838, 846 ("[t]here was no impropriety in Radnor's retention of Lehman even in light of
Lehman's prior relationship with Tennenbaum."); *see also* Objection ¶¶ 12, 39.

[7] Because the creditors committee sued derivatively pursuant to a Court order granting it standing
to assert estate claims [D.I. 512], and Kennedy's complaint likewise seeks relief for and on behalf of the
debtors, the Court's findings are *res judicata* as to Kennedy. *See Cramer v. General Telephone &
Electronics Corp.*, 582 F.2d 259, 267 (3d Cir. 1978) (holding that an initial shareholder suit that was
dismissed on same grounds as pursued by subsequent shareholder was *res judicata* on subsequent

Third, the claims have been released.  The asset purchase agreement approved by the Sale

Order contained a provision releasing Tennenbaum and its affiliates from any claim relating in

any way to a "Prior Event."  *See* Sale Order Ex. 1 (APA) at § 12.11; *supra* p. 8.  The term "Prior

Event" was defined as:

> any transaction, event, circumstances, action, failure to act or occurrence of any
> sort or type, … which occurred, existed, was taken, permitted or begun prior to
> the consummation of the Transactions contemplated hereunder.   For the
> avoidance of doubt, 'Prior Events' shall include … the acquisition by any of
> Tennenbaum Lenders or any other of Purchaser Group of equity interests in any
> of Sellers … [and] the membership on, and involvement with the activities of, the
> Board of Directors of any of the Sellers (including pursuant to board observer
> rights).

*Id.*  In other words, claims relating in any way to the Sale are released.  Since Kennedy's claims

relate to Tennenbaum's acts leading up to the Sale, the claims fall squarely within the release,

and are barred.

Fourth, Kennedy purports to assert claims on behalf of "Radnor Holdings Corporation, *et

al.*," but he has no standing to do so.  Under Radnor's bankruptcy plan, standing to pursue claims

on behalf of the reorganized debtors rests with the "Plan Trustee."  *See* Second Amended Plan at

p. 24 [D.I. 1940-1] (creation of plan trust to hold and liquidate estate assets).  Kennedy has no

authority to do anything for the reorganized debtors, so the claims that he purportedly brings on

their behalves are defective on their face—and this is ignoring the fact that such claims already

have been brought on the debtors' behalves by the creditors' committee in 2006.[8]

---

shareholder suit; derivative suits are deemed to be brought by the corporation, and thus the same plaintiff
is deemed involved if two separate shareholders initiated the two derivative suits).

[8] Kennedy lacks standing to assert two other causes of action for an alternative reason.  His
claims for "perjury" and "obstruction of justice" are criminal claims under Title 18 of the U.S. Code that
are appropriately brought by government attorneys and not by private parties.  *See* 18 U.S.C. § 1621
(perjury); 18 U.S.C. §§ 1501 et seq. (obstruction of justice).  While these claims have no substantive
merit whatsoever, it is black letter law that "a private party may not enforce criminal statutes through a
civil action." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 635 (N.D. Tex. 2007).

18

Fifth, Kennedy had waived his claims by asking to present them in opposition to plan confirmation, receiving multiple extensions, and then failing to object. *See supra* pp. 10-11. When he requested the first extension, Kennedy's counsel sent the debtors a draft pleading that is substantially the same as the Amended Complaint. Confirmation was delayed by four months to give Kennedy an opportunity to file that pleading. Kennedy ultimately did not file it, *but he could have.* Res judicata "precludes a party from re-litigating claims that were *or could have been* asserted in a prior action." *Peltz v. Worldnet Corp. (In re USN Commc'ns, Inc.)*, 280 B.R. 573, 586 (Bankr. D. Del. 2002) (emphasis added). By requesting time to object to confirmation, sending a mirror image of his complaint to debtor's counsel, and then failing to object to entry of the confirmation order, Kennedy is bound by the confirmation order's res judicata effect.

Finally, the Amended Complaint is premised on clear factual inaccuracies that on their face are contradicted by the very evidence that Kennedy cites. Kennedy claims that Tennenbaum handpicked Skadden, while the emails he cites demonstrate the opposite, *e.g.*, that Tennenbaum's designee Feliciano *objected* to the hiring of Skadden. *See* Objection ¶ 40 (quoting emails). Kennedy also claims that he never knew that the Debtors held potential claims against Tennenbaum, yet he personally testified at the trial in which the creditors' committee asserted those claims derivatively on the debtors' behalves. *See* Objection ¶ 41. Any reasonable person reviewing the evidence could not reach the same conspiracy theory conclusions that Kennedy reached, because the evidence suggests exactly the opposite. *See generally* Objection ¶¶ 37-44 (listing factual errors in substantially identical motion to set aside Sale Order). Importantly, after a two-day evidentiary hearing, this Court agreed. Among other things, the Court found that Kennedy's testimony and evidence were not credible:

- Kennedy's testimony that he was unaware of Skadden's relationship with Tennenbaum "lacks credibility," "is not believable," "is inconsistent with his subsequent testimony,"

19

and "is belied by the fact that Kennedy sent an e-mail to Feliciano on May 30, 2006 in which he stated 'I understand that Skadden has represented TCP in other unrelated matters in the past....'" Memorandum Opinion ¶ 21-22 (citations omitted) [Main Case D.I. 2076].

- "The documentary evidence and testimony demonstrates that Feliciano of Tennenbaum did not insist on hiring Skadden. Rather, he requested that other firms, in addition to Skadden and Duane Morris, be interviewed.... In short, as Kennedy was forced to concede at the hearing, Feliciano did not insist that Radnor hire Skadden, but rather requested that Radnor interview additional firms besides Skadden and Duane Morris. This was because Tennenbaum, and Feliciano and Hollander, actively opposed the hiring of Skadden." *Id.* ¶ 18 (citations omitted).

In addition, the Court found that Kennedy's allegations had no basis in fact:

- "Kennedy's allegation that 'Skadden was selected to represent the Debtors by Tennenbaum' has no basis in fact. Skadden was chosen and retained by Radnor. Kennedy signed Skadden's retention letter." *Id.* ¶ 16 (citations omitted).

- "Kennedy's allegations that 'the Radnor board was steered throughout the retention process by Skadden and Tennenbaum' has no basis in fact. Skadden did not participate in the board meeting where the subject of retention was considered and decided upon. Tennenbaum, in turn, had only one vote out of four. *Id.* ¶ 17 (citations omitted).

- "Skadden did not wrongfully collude or conspire with Tennenbaum to orchestrate or manipulate these Chapter 11 cases and the sale process for the benefit of Tennenbaum at the expense of Debtors' creditors and equity interest holders, or Kennedy and his affiliates. Tennenbaum did not engage in misconduct, wrongful conduct, fraud, illegal conduct or a breach of fiduciary duty. Tennenbaum at all times acted in good faith with a view to maximizing Radnor's value to all constituents. Tennenbaum never aided and abetted a breach of fiduciary duty. Tennenbaum did not plan to acquire Debtors when it made its initial investment in Debtors, nor at any time thereafter. There was no collusion or conspiracy between Skadden and its affiliates on the one hand, and Tennenbaum or its affiliates on the other in connection with any matter in these Chapter 11 cases." *Id.* ¶¶ 35-36 (citations omitted).

For all of these reasons, Kennedy's Amended Complaint is defective on its face. Under Rule 11's objective test, a reasonable person in Kennedy's position would uncover these defects, and thus Kennedy either did not make a reasonable inquiry before filing his Amended Complaint, or if he did, he proceeded in the knowledge that his complaint was frivolous. Either way, Kennedy violated his duty under Rule 9011, and therefore sanctions are appropriate.

20

**II.    Alternatively, Kennedy Should Be Sanctioned For Unreasonably Multiplying Proceedings That Should Have Ended With The Committee Litigation**

Under 28 U.S.C. § 1927, an attorney is liable for the costs and expenses of the opposing party arising from the attorney's vexatious litigation:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Although § 1927 refers to "attorneys," it applies to pro se plaintiffs who are lawyers. *See, e.g., Davey v. Dolan*, 453 F. Supp. 2d 749, 757 (S.D.N.Y. 2006) ("Sanctions include the awarding of attorney's fees, and may be imposed under this section against a plaintiff who appears pro se if the plaintiff is himself a lawyer.") (citing *Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992)); *Wages v. IRS*, 915 F.2d 1230, 1235-36 (9th Cir. 1990) (§ 1927 sanctions may be imposed on pro se litigant).

In any event, regardless of whether 28 U.S.C. § 1927 applies to non-lawyer pro se litigants, the Third Circuit has recognized that a court may achieve the same results as § 1927 through its inherent sanctioning power. *Institute for Motivational Living, Inc. v. Doulos Institute for Strategic Consulting, Inc.*, 110 F. App'x 283, 286 (3d Cir. 2004). Based on this reasoning, the Third Circuit affirmed a sanctions award against a pro se litigant by noting that even assuming that § 1927 does not apply to pro se litigants, "the District Court ha[s] inherent authority to impose the *identical sanction*." *Id.* at 286-7 (emphasis added). Thus, this Court has the power to sanction Kennedy for unreasonably multiplying litigation in this bankruptcy case.

A four-part test governs sanctions under § 1927: the attorney must have "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Claybrook v. AutoZone*

21

*Texas, L.P. (In re Am. Remanufacturers, Inc.)*, 453 B.R. 235, 237 (Bankr. D. Del. 2011) (citation omitted).

Sanctions are appropriate here for the same reasons as they are under Rule 9011. As the Third Circuit noted in *Lewis v. Smith*, where the it affirmed sanctions against an attorney who filed an action that clearly was barred by *res judicata*:

> By filing *Lewis II*, Bailey [the attorney] multiplied proceedings that should have concluded with the resolution of *Lewis I*. If Bailey believed the outcome in Lewis I was incorrect, he should have asked for reconsideration or filed an appeal in this Court upon conclusion of the action. Bailey's actions in filing an entirely separate case were therefore unreasonable and vexatious. And filing an entirely separate case obviously increases the cost of proceedings.

*Lewis v. Smith*, 480 F. App'x 696, 698 (3d Cir. 2012). So too here. Kennedy multiplied proceedings that should have concluded with the Sale in November 2006. If Kennedy believed that the Sale was improper, he should have appealed, particularly as he possessed his evidence (or the evidence was in the public record) as of time of the Sale in November 2006. *See* Objection ¶ 46 (evidence cited by Kennedy in his possession or in public record prior to November 2006). By filing his complaint over six years later and creating this unnecessary adversary proceeding, Kennedy's actions are unreasonable and vexatious, and he has increased the cost of the proceedings by forcing both the reorganized debtors and Tennenbaum to respond and attend hearings. *See* Main Case D.I. 2017, 2018, 2049, 2050, 2073, Adv. D.I. 11, 13, 14, 17.

In addition, the Court can objectively infer bad faith on Kennedy's part. "Indications of bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Lewis*, 480 F. App'x at 698 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). The claims advanced here are meritless because they are barred by the statute of limitations and doctrines of preclusion, because they are

22

released, because Kennedy lacks standing to assert them, because Kennedy failed to bring them in opposition to confirmation, and because they are based on unsupportable interpretations of the evidence. *See supra* pp. 14-21; Objection ¶¶ 37-46. As a lawyer, Kennedy must have known of the legal defects in his case. His counsel was so informed in May 2012, and his counsel was unwilling to sign the draft confirmation objection, so that Kennedy was forced to seek new "special" (read: "reckless") counsel. To date no counsel has signed the Amended Complaint other than Kennedy himself. By stubbornly continuing to proceed with his Amended Complaint—at a time when Tennenbaum is pursuing its rights against him under his guaranty—Kennedy's actions demonstrate that his motion was filed for leverage, not for a proper purpose. Accordingly, sanctions are appropriate for unreasonably continuing litigation over the Sale.

## SANCTIONS REQUESTED

As sanctions for filing his frivolous pleading, Tennenbaum requests reimbursement of the fees and costs it has incurred in responding to Kennedy (both in the main case and in the adversary proceeding), and in prosecuting this motion for sanctions, as set forth in the proposed order attached to the motion.

The Tennenbaum defendants certify that they have complied with Bankruptcy Rule 9011(c). Specifically, they served this motion on Kennedy as provided in Rule 7004, and waited until 21 days after such service before filing or presenting this motion to the Court.

## CONCLUSION

Because the Amended Complaint lacks a non-frivolous legal and factual basis, Kennedy should be sanctioned for filing it. Tennenbaum respectfully request that the Court enter the proposed order attached to the motion and grant such other and further relief as is just and appropriate.

RLF1 8916407v.2

Dated: Wilmington, Delaware
      August 26, 2013

RICHARDS, LAYTON & FINGER, P.A.

Russell C. Silberglied (No. 3462)
Cory D. Kandestin (No. 5025)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701

*Counsel to Tennenbaum Capital Partners, LLC, Tennenbaum & Co. LLC, Special Value Expansion Fund, LLC, Special Value Opportunities Fund, LLC, Michael E. Tennenbaum, Suzanne S. Tennenbaum, David A. Hollander, Mark K. Holdsworth and Howard M. Levkowitz.*

24