## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| RADNOR HOLDINGS CORPORATION, *et al.*, | : | Bankr. Case No. 06-10894-KG |
| | : | |
| Debtors. | : | Adv. No. 12-51308-KG |
| | : | |
| MICHAEL T. KENNEDY, | : | |
| | : | Civ. No. 16-332-RGA |
| Appellant, | : | |
| v. | : | |
| | : | |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, | : | |
| TENNENBAUN CAPITAL PARTNERS, LLC, | : | |
| ALVAREZ AND MARSHAL LLC, | : | |
| | : | |
| Appellees. | : | |

## MEMORANDUM

Appellant Michael T. Kennedy, *pro se*.

David B. Stratton, Esq., Pepper Hamilton LLP, Wilmington, DE, attorney for Appellees Skadden, Arps, Slate, Meagher & Flom LLP, Gregg Galardi, Richard T. Prins, and SK Private Investment Fund 1998 LLC.

Russell C. Silberglied, Esq., Cory D. Kandestin, Esq., Richards Layton & Finger, P.A., Wilmington, DE, attorneys for Appellees Tennenbaum Capital Partners, LLC, Tennenbaum & Co. LLC, Special Value Expansion Fund, LLC, Special Value Opportunities Fund, LLC, Babson & Co. LLC, Michael E. Tennenbaum, Suzanne S. Tennenbaum, David A. Hollander, Mark K. Holdsworth, Howard M. Levkowitz, Richard E. Spencer, and José Feliciano.

February 9, 2017

*[signature]*

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Presently before the Court is an appeal by Michael T. Kennedy from a memorandum opinion and final order (Adv. D.I. 121, 122)[1] (the "Dismissal Order") of the United States Bankruptcy Court for the District of Delaware granting with prejudice the motions to dismiss (Adv. D.I. 110, 112) filed by the Skadden Defendants[2] and the Tennenbaum Defendants[3] with respect to Kennedy's amended complaint ("Complaint")[4] and imposing sanctions.

## I. Introduction

Kennedy was the founder, chairman, and 80% shareholder of Radnor Holdings Corporation ("Radnor"). In 2006, Radnor and numerous related subsidiaries ("Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Radnor later sold its assets to an affiliate of its secured lender, Tennenbaum Capital Partners LLC ("Tennenbaum") (B.D.I. 698) ("Sale Order"). Skadden served as Radnor's counsel in the chapter 11 cases. In December 2012 – more than six years after the sale to Tennenbaum was approved by the Bankruptcy Court – Kennedy filed three challenges against Tennenbaum and Skadden: (1) a motion to set aside the Sale Order approving the sale of Radnor's assets to Tennenbaum; (2) an objection to Skadden's final fee application; and (3) a complaint seeking $300 million in

---

[1] The docket of the chapter 11 cases, *In Radnor Holdings Corporation.*, Case No. 06-10894 (KG) (Bankr. D. Del.), is cited herein as "B.D.I. __." The docket of the adversary proceeding, *Kennedy v. Skadden, Arps, Slate, Meagher & Flom LLP, et al.*, Adv. No. 12-51308 (KG) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

[2] The Skadden Defendants include defendants Skadden, Arps, Slate, Meagher & Flom LLP, Gregg Galardi, Richard T. Prins, and SK Private Investment Fund 1998 LLC.

[3] The Tennenbaum Defendants include defendants Tennenbaum Capital Partners, LLC, Tennenbaum & Co. LLC, Special Value Expansion Fund, LLC, Special Value Opportunities Fund, LLC, Babson & Co. LLC, Michael E. Tennenbaum, Suzanne S. Tennenbaum, David A. Hollander, Mark K. Holdsworth, Howard M. Levkowitz, Richard E. Spencer, and José Feliciano.

[4] The Court's reference to "the Complaint" is to the Amended Complaint filed on February 26, 2013. (Adv. D.I. 6). The original complaint dates back to December 26, 2012. (Adv. D.I. 1).

1

damages and rescission of the asset sale. (*See* B.D.I. 1993, 1994). Each of these requests for relief alleged the same underlying wrongdoing: a conspiracy by Tennenbaum and Skadden to hide conflicts of interest, retain Skadden as Radnor's bankruptcy counsel, and ensure a sale to Tennenbaum to the exclusion of other restructuring options preferred by Kennedy. (*See* Adv. D.I. 6 at ¶ 30; B.D.I. 1993 at 3-4, Preliminary Statement).

The Bankruptcy Court denied the request to set aside the Sale Order as time-barred. (*See* B.D.I. 2032). The Bankruptcy Court then scheduled a hearing on Kennedy's fee objection. Because the fee objection expressly incorporated all of the allegations in the Complaint, the Bankruptcy Court stayed the Complaint's response deadline until after the fee objection could be heard. (*See* Adv. D.I. 24). The Bankruptcy Court conducted a two-day evidentiary hearing on the fee objection and determined that Skadden and Tennenbaum did not fail to disclose conflicts or act improperly in the chapter 11 cases. *In re Radnor Holdings Corp.*, 2013 WL 3228116 (Bankr. D. Del. June 20, 2013). This Court and the Third Circuit affirmed. Upon conclusion of the Third Circuit appeal, Skadden and Tennenbaum moved separately to dismiss the Complaint. The Bankruptcy Court granted those motions, and this appeal followed.

## II. Background

### A. Skadden's Retention

On August 25, 2006, the Debtors filed an application to retain Skadden as their bankruptcy counsel, effective as of the petition date, pursuant to an engagement agreement dated July 5, 2006. (*See* B.D.I. 96). At the time, Tennenbaum was a secured lender to Radnor and controlled one of Radnor's four board seats by virtue of its appointment of José Feliciano, who served on the board from February 9, 2006 until June 26, 2006. Counsel to a debtor must be "disinterested" and not "hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a). Likewise, Bankruptcy Rule 2014 requires debtors' counsel to disclose connections with parties

2

in interest in the bankruptcy case. Fed. R. Bankr. P. 2014(a). In support of its retention, Skadden filed several declarations disclosing its ties with Tennenbaum. (*See* B.D.I. 96, dated August 29, 2006; B.D.I. 223, dated September 18, 2006; and B.D.I. 1222, dated December 19, 2007). The declaration annexed to the retention application disclosed Skadden's representation of Tennenbaum in matters unrelated to Radnor; that Skadden previously provided approximately five hours of tax advice to Tennenbaum in matters related to Radnor; that Skadden obtained a full waiver from Tennenbaum in connection with its proposed retention; and that during the previous 12-month period, the value of time Skadden billed to Tennenbaum accounted for .027% of the value of time billed to all Skadden client matters. (*See* B.D.I. 96 at 11-12). On September 13, 2006, the U.S. Trustee opposed Skadden's retention, arguing that Skadden's relationship with Tennenbaum was a conflict of interest. (*See* B.D.I. 169). This objection created a contested matter. At issue was whether Skadden's relationship with Tennenbaum would disqualify it from becoming counsel to the Debtors. Skadden filed a supplemental declaration describing Skadden's work for Tennenbaum, which included representing Tennenbaum in its capacity as a registered investment advisor and occasionally on corporate matters, as well as assisting Tennenbaum's two affiliates – funds that make investments in companies like Radnor – in formation, raising capital, SEC regulatory and reporting requirements, and day to day corporate matters. (*See* B.D.I. 223).

The Bankruptcy Court held a contested evidentiary hearing on September 20, 2006, at which time Skadden's connections with Tennenbaum were explored and evaluated. (*See* B.D.I. 298, 9/20/06 Hr'g. Tr.). Skadden further disclosed that certain Skadden partners invested in Tennenbaum-affiliated funds, over which they had no investment authority. (*See id*. at 36-37). Based on these disclosures and the evidence presented at the hearing, the Bankruptcy Court concluded that Tennenbaum was not a significant client and Skadden's relationship with

Tennenbaum was not a disabling conflict of interest. On September 21, 2006, the Bankruptcy

Court authorized Skadden's retention, and this order was not appealed. (B.D.I. 246). This final

order resolved the issue of whether Skadden was conflicted, which is a core allegation of the

Complaint.

### B.     Litigation Against Tennenbaum

Tennenbaum's secured claims were heavily litigated during the chapter 11 cases. On the

first day of the chapter 11 cases, Skadden recommended to Radnor's board that it form a special

committee and hire separate counsel that had not represented Tennenbaum to investigate any

potential claims and causes of action against Tennenbaum and the liens securing Tennenbaum's

claims. (*See* B.D.I. 298, 9/20/06 Hr'g. Tr. at 36). WilmerHale was retained by the special

committee, and its retention was approved by the Bankruptcy Court. (*See* B.D.I. 276). On

October 25, 2006, the Debtors filed an objection to Tennenbaum's claims. (B.D.I. 476). The

objection was filed by WilmerHale as counsel for the special committee and by Skadden as

counsel for the Debtors.

After attempts at restructuring proved unsuccessful, the Debtors initiated a sale process,

and ultimately requested that Tennenbaum make an offer to purchase Radnor's operating

business. During the sale process, the Official Committee of Unsecured Creditors ("Committee')

initiated an adversary proceeding against Tennenbaum and Feliciano, asserting causes of action

based on recharacterization, equitable subordination, breaches of fiduciary duty, fraudulent

conveyances, avoidance of liens, and objections to claims. (*See* B.D.I. 526). The Committee

alleged that Tennenbaum became Radnor's secured lender so that it could engineer a bankruptcy

fire sale and buy the company at a low price, leaving unsecured creditors with nothing:

> [I]f Tennenbaum is permitted to consummate its scheme and to proceed with its
> acquisition plan, the unsecured creditors stand to recover nothing. That outcome is
> by design, the result of a deliberate, coordinated plan by Tennenbaum to increase the
> debt load of the already over-leveraged Debtors, take them into default, and then

4

acquire Debtors' valuable assets and business operations in a fire-sale at a discount so steep that it constitutes a constructively fraudulent transfer.

(*See id.* at 2). On November 17, 2006, following an eight-day trial, the Bankruptcy Court entered a judgment against the Committee on each count of its complaint not previously withdrawn by the Committee ("Tennenbaum Judgment"). *See Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners LLC*, 353 B.R. 820, 827 (Bankr. D. Del. 2006). Kennedy was a key witness against Tennenbaum during the trial, and the Bankruptcy Court determined that:

> TCP [Tennenbaum Capital Partners] did *not* engage in misconduct; TCP did *not* seek to benefit itself at the expense of others; TCP did *not* seek to mislead trade creditors, public noteholders or other stakeholders. TCP at all times acted in good faith with a view to maximize Radnor's value to all constituents.

*Id.* at 841 (emphasis in original). The Committee appealed the Tennenbaum Judgment but later voluntarily dismissed the appeal. The Tennenbaum Judgment resolved the issue of whether Skadden and Tennenbaum conspired in the bankruptcy cases to ensure a sale to Tennenbaum, which is a core allegation of the Complaint.[5]

## C. Sale of Debtors' Assets to Tennenbaum's Affiliate

On November 21, 2006, the Bankruptcy Court entered the Sale Order approving the sale of substantially all of the Debtors' assets to an affiliate of Tennenbaum. The Sale Order contains specific findings, including that: (1) the sale to Tennenbaum represented the highest and best offer after a fair marketing process (B.D.I. 698 at ¶ M); (2) the asset purchase agreement and sale transaction were negotiated by the Debtors and Tennenbaum at arms' length, without collusion

---

[5] *See* Complaint at ¶ 30 ("Defendants acted in concert … to orchestrate a sale of Radnor's assets to the exclusive benefit of the Tennenbaum defendants").

or fraud, and in good faith within the meaning of sections 363(m)[6] and (n)[7] of the Bankruptcy

Code (*id.* at ¶ N); (3) Tennenbaum did not engage in any conduct that would permit the sale to be

avoided, or costs or damages imposed, under section 363(n) (*id.*); (4) there was no evidence of

insider influence, improper conduct, fraud, or collusion by Tennenbaum or its affiliate in

connection with the negotiation and the sale (*id.* at ¶ W); and (5) the sale was undertaken by

Tennenbaum in good faith and Tennenbaum was a purchaser in good faith within the meaning of

section 363(m) (*id.* at 15, ¶ 5). The Bankruptcy Court further found that a restructuring or

reorganization (as opposed to the sale and liquidation) was precluded by Radnor's

circumstances, not by improper conduct on Skadden or Tennenbaum's part. (*See id.* at ¶ L). The

Sale Order was not appealed. Thus, the Sale Order resolved the issue of whether Tennenbaum's

purchase of the Debtors' assets was somehow wrongful, which is a core allegation of the

Complaint.

### D.    The Plan of Liquidation

On September 10, 2012, the Bankruptcy Court held a hearing to consider confirmation of

the Debtors' plan of liquidation. Kennedy's counsel requested that confirmation be delayed so

that Kennedy could object to the plan on the basis of an unspecified "matter" that Kennedy had

"uncovered." *See Radnor*, 2013 WL 3228116, at *11. It is now clear that the newly uncovered

matter was the same wrongdoing alleged in the Complaint. (*See* Complaint at ¶ 209 (alleging

---

[6] Section 363(m) of the Bankruptcy Code provides that a reversal or modification of an order approving a sale under section 363(b) "does not affect the validity of [the] sale ... under such authorization to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal." *See* 11 U.S.C. § 363(m).

[7] Section 363(n) of the Bankruptcy Code provides that a debtor may (a) avoid a sale approved under section 363(b) if the sale price was controlled by an agreement among potential bidders, or (b) recover from a party to such an agreement any amount by which the value of the property sold exceeds the price at which the sale was consummated. *See* 11 U.S.C. § 363(n).

that Kennedy learned of the wrongdoing while preparing for the confirmation hearing)). The

Bankruptcy Court extended Kennedy's deadline to object for 30 days, and Radnor later

voluntarily extended that deadline by an additional 90 days. *Radnor,* 2013 WL 3228116, at *11.

Despite these extensions, Kennedy failed to file any objection to the proposed plan; rather he

filed another motion to extend his objection deadline. *See id.* at *11 ("On July 15, 2012, the

Court denied Kennedy's Motion to Extend, and Kennedy was time-barred from filing any

objection to confirmation of the Debtors' plan in the above-captioned cases"). On September 10,

2012, the Bankruptcy Court entered the Confirmation Order (B.D.I. 1976), which was not

appealed. The Confirmation Order included a finding that Debtors had acted in good faith in

negotiating, formulating, and soliciting votes for acceptance of the plan (*id.* at 17-18, 22-23);

enjoined claimholders from taking any action inconsistent with the provisions of the plan (*id.* at

27-28); and released the Debtors and their professionals from any liability for any post-petition

act or omission arising out of the chapter 11 cases, except for willful misconduct or gross

negligence (*id.* at 28). The plan also resulted in the elimination of all of Kennedy's equity in

Radnor.

### E.    Final Fee Order

As consideration in the asset sale, Tennenbaum paid cash and also "credit bid" a portion

of its secured claim. Because Tennenbaum did not credit bid its entire claim, it still held claims

against Radnor after the sale. Kennedy had personally guaranteed up to $10 million of those

claims, so Tennenbaum sought to enforce the guaranty. When Kennedy refused to pay,

Tennenbaum sued him for breach of contract in New York and prevailed.[8] Tennenbaum and

Kennedy have been embroiled in litigation for years. But it was only after plan confirmation –

---

[8] *See Tennenbaum Capital Partners, LLC v. Kennedy*, 2009 WL 2913679, at *1 (S.D.N.Y. Sept. 11, 2009), *aff'd,* 375 F. App'x 180, 181 (2d Cir. 2010).

7

when his objections were barred – that Kennedy initiated his challenges against Tennenbaum and Skadden alleging misconduct in the chapter 11 cases.

On November 18, 2012, Skadden filed its final fee application seeking compensation for services rendered and reimbursement of expenses incurred as counsel to Debtors for the period from August 21, 2006 through and including September 28, 2012. (B.D.I. 1989). On December 26, 2012, Kennedy filed a combined motion and objection, in which he objected to the Skadden's final fee application and moved to set aside the Sale Order under Rule 60(b) (B.D.I. 1993) ("Objection"). The Objection purported to seek various forms of relief in addition to "setting aside" the Sale Order, including "revesting" in the Debtors' estates the assets sold to Tennenbaum's affiliate; invalidating certain plan releases approved in the Confirmation Order; and appointing an examiner, trustee, and special counsel to conduct an investigation and bring certain causes of action at Kennedy's behest. (*See id.*) Contemporaneously therewith, Kennedy also filed the Complaint which sought $300 million in damages and rescission of the sale. Kennedy's Objection expressly incorporated the allegations of the Complaint: (1) Tennenbaum was a major client of Skadden; (2) Skadden failed to disclose this to Kennedy, Radnor's board, or the Bankruptcy Court; (3) Tennenbaum steered Radnor to retain Skadden; (4) Tennenbaum and Skadden colluded and conspired to advance Tennenbaum's objectives in the Debtors' chapter 11 cases to the exclusion of Kennedy's goals; (5) Skadden "effectively represented" Tennenbaum's interests in Radnor's chapter 11 cases; (6) Skadden prevented Kennedy from participating in the chapter 11 cases and orchestrated a sale of Debtor's assets to Tennenbaum; and (7) Skadden frustrated Kennedy's and Radnor's attempts to reorganize Radnor. (*See* Adv. D.I. 6).

The Bankruptcy Court denied the request to set aside the Sale Order as time-barred, as more than six years had passed since its entry. (*See* B.D.I. 2032). The Bankruptcy Court then

8

stayed Defendants' deadline to respond to the Complaint until after the resolution of the

Objection. (*See* Adv. D.I. 24). On May 1 and 2, 2013, the Bankruptcy Court conducted a two-

day evidentiary hearing on the Objection, and Kennedy was represented by counsel and

personally testified at the hearing. (*See* B.D.I. 2053 at 2 (listing counsel); *Radnor*, 2013 WL

3228116, *6 (credibility findings on Kennedy's testimony)). In hearing evidence, several of the

Bankruptcy Court's rulings turned on Kennedy's incorporation of the Complaint's allegations

into his Objection. (*See, e.g.,* B.D.I. 2053, 5/1/2013 Hr'g. Tr. at 62 ("Mr. Kennedy has injected

his complaint into this [Objection]")).

Following the evidentiary hearing and post-trial briefing (B.D.I. 2068, 2073), the

Bankruptcy Court overruled Kennedy's Objection in all respects and approved Skadden's final

fee application in its entirety ("Final Fee Order"). *See In re Radnor*, 2013 WL 3228116 (Bankr.

D. Del. June 20, 2013). The Final Fee Order contains numerous and detailed findings of fact and

conclusions of law upon which the Bankruptcy Court determined that the claims and allegations

of misconduct by Skadden asserted in the Complaint and Objection were without basis in fact

and lacked legal foundation. (*See id.*) The Bankruptcy Court rejected Kennedy's allegations that

Tennenbaum and Skadden had colluded or conspired in the chapter 11 cases:

> Skadden did not wrongfully collude or conspire with Tennenbaum to orchestrate
> or manipulate these Chapter 11 cases and the sale process for the benefit of
> Tennenbaum at the expense of the Debtors' creditors and equity interest holders,
> or Kennedy and his affiliates ... There was no collusion or conspiracy between
> Skadden and its affiliates on the one hand, and Tennenbaum or its affiliates on the
> other in connection with any matter in these Chapter 11 cases.

*Radnor*, 2013 WL 3228116, at *9. The Bankruptcy Court further rejected Kennedy's allegations

that Tennenbaum engaged in any wrongdoing in the bankruptcy case:

> Tennenbaum did not engage in misconduct, wrongful conduct, fraud, illegal
> conduct or a breach of fiduciary duty ... Tennenbaum at all times acted in good
> faith with a view to maximizing Radnor's value to all constituents.

*Id.* The Bankruptcy Court further rejected Kennedy's allegations that Skadden made insufficient

disclosures and concealed conflicts of interest:

> Given the full record of Skadden disclosures, Skadden did not misrepresent its relationships with Tennenbaum to the Court or the UST. Skadden's numerous disclosures in these Chapter 11 cases (including the Galardi declarations and Skadden's statements at the September 20, 2006 hearing) were extensive, publicly filed, made on the record, and available to any member of the public, including Kennedy.

*Id.* at *4. The Bankruptcy Court further rejected Kennedy's allegations that he did not know of Skadden's relationship with Tennenbaum, finding that he knew of it in 2006. *See id.* at *4 ("Skadden's pre-existing attorney client relationship with Tennenbaum was disclosed and known to Kennedy … when Skadden was retained prepetition …"); *id.* at *6 ("the Court finds that Kennedy lacks credibility" in claiming that he did not know about the relationship); *id.* (finding "not believable" Kennedy's testimony that he believed that Skadden had done no Radnor-related work for Tennenbaum other than five hours of tax-related work).

The findings and conclusions in the Final Fee Order are clearly contrary to the Complaint's core allegations that Skadden and Tennenbaum conspired to hide conflicts of interest, and to engineer an asset sale to Tennenbaum in the chapter 11 cases, to the detriment of Kennedy and other shareholders and creditors.

**F.    Subsequent Litigation and Appeals**

Kennedy appealed the Final Fee Order on July 3, 2013. (B.D.I. 2078). On September 5, 2013, the Skadden Defendants filed a motion for sanctions against Kennedy pursuant to Federal Rule of Bankruptcy Procedure 9011 and 28 U.S.C. § 1927,[9] seeking, among other relief, dismissal of the Complaint (Adv. D.I. 58) ("Sanctions Motion"). On August 14, 2014, this Court affirmed the Final Fee Order, finding that the Bankruptcy Court's factual findings and

---

[9] 28 U.S.C. § 1927 provides, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

conclusions were proper based on its "thorough and reasoned memorandum opinion" including findings that Kennedy's testimony lacked credibility, that Kennedy made "numerous assertions devoid of specific facts to support his position," and that Skadden's disclosures were "adequate and sufficient." *See Kennedy v. Skadden, Arps, Slate, Meagher & Flom LLP (In re Radnor Holdings Corp.)*, 528 B.R. 245 (D. Del. 2014). On September 2, 2014, Kennedy appealed this Court's ruling to the Third Circuit.

While the Third Circuit appeal was pending, the Honorable Peter J. Walsh retired, and the chapter 11 cases were reassigned to the Honorable Kevin Gross on December 10, 2014. (B.D.I. 2131). Shortly thereafter, on January 23, 2015, Kennedy filed a motion to vacate the Final Fee Order, on the grounds that Judge Walsh had relied on false statements and was not aware of important new evidence (B.D.I. 2133) ("Motion to Vacate"). The Third Circuit appeal was stayed while the Motion to Vacate was pending. On March 18, 2015, the Bankruptcy Court denied the Motion to Vacate, finding that Kennedy had not asserted a single new fact or argument which the Bankruptcy Court and this Court had not already considered and rejected, and that Kennedy, dissatisfied with the ruling, was merely "taking a 'run' at a newly assigned judge." (*See* B.D.I. 2151 at 11). The Bankruptcy Court further determined that it was the law of the case that (1) the Skadden Retention Order resolved Skadden's purported conflict of interest and failure to disclose; (2) the Tennenbaum Judgment resolved Tennenbaum's purported improper scheme in the bankruptcy case to buy Debtors; (3) the Sale Order resolved Tennenbaum's purported conspiracy with Skadden to purchase Debtors; and (4) the Final Fee Order resolved and rejected all allegations of wrongdoing by and between Tennenbaum and Skadden. *See id.* The Bankruptcy Court deferred ruling on the Sanctions Motion, however, finding it inappropriate to consider it while the Third Circuit appeal remained pending. (*See id.* at 12). On December 10, 2015, the Third Circuit affirmed the Final Fee Order. *See In re Radnor*

11

*Holdings Corp.*, 629 F. App'x 277 (3d Cir. 2015).[10]  On October 11, 2016, the United States

Supreme Court denied Kennedy's petition for certiorari. (*See* D.I. 18).

On February 12, 2016, the Defendants filed their motions to dismiss (Adv. D.I. 110, 112).

On April 22, 2016, the Bankruptcy Court entered the Dismissal Order, dismissing the Complaint

with prejudice on grounds that the claims were (1) time-barred, (2) precluded by prior court

orders and opinions, and (3) asserted by Kennedy without proper standing. (*See* Adv. D.I. 121).

The Bankruptcy Court further determined that Kennedy had litigated his claims "beyond

reason," which justified Defendants' request for sanctions, but declined to impose fees and costs;

rather, the Bankruptcy Court barred Kennedy from filing any further motions without first

obtaining leave of the court. (*See* Adv. D.I. 121 at 12).  On May 5, 2016, Kennedy timely

appealed the Dismissal Order. (*See* D.I. 1).  The merits of the appeal have been fully briefed.

(D.I. 10, 12, 14, 16).  No party has requested oral argument with respect to the appeal. (*See* D.I.

17).

## III.    CONTENTIONS

On appeal, Kennedy raises several constitutional arguments, including that the

Bankruptcy Court, as a non-Article III court, lacked authority to enter a final order dismissing

the Complaint because Kennedy did not consent to the Bankruptcy Court's authority, and the

Complaint included non-core claims. (D.I. 10 at 12-16).  Throughout the pleadings, Kennedy

also generally asserts that the Bankruptcy Court's dismissal of the Complaint without discovery

and a jury trial violated his rights under the Fifth, Seventh, and Fourteenth Amendments to the

United States Constitution. (*See id*. at 12-15).  Kennedy further asserts that the Bankruptcy

Court erred in concluding that equitable tolling did not apply to the statute of limitations based

on Defendants' concealment of fees and material adverse conflicts. (*See id.* at 18-20).  Kennedy

_____

[10] On January 19, 2016, the Third Circuit issued its mandate affirming the Final Fee Order.

argues that the Bankruptcy Court also erred in applying law of the case, *res judicata*, and collateral estoppel because Kennedy was not a party to prior proceedings and did not have an opportunity to litigate the issues presented in the Complaint. (*See id.* at 20-23). Finally, Kennedy argues that the Bankruptcy Court erred in concluding he lacked standing to assert the claims included in the Complaint because he may be granted standing under a provision of Delaware General Corporate Law, pursuant to which Kennedy argues Radnor may appoint a trustee by petitioning the Delaware Court of Chancery. (*See id.* at 24-25).

Defendants argue there is no merit in Kennedy's constitutional arguments. According to Defendants, the Bankruptcy Court had authority to enter the Dismissal Order because claims in the Complaint are core matters arising in the chapter 11 cases, Kennedy consented to the Bankruptcy Court's final adjudication of the Complaint, and because the Bankruptcy Court has authority to grant pretrial dispositive motions in adversary proceedings even with respect to non-core claims. (*See* D.I. 12 at 45-48; D.I. 14 at 19-21). Defendants further argue that Kennedy's putative jury trial and discovery rights were not implicated by the Dismissal Order where the Complaint failed to make a plausible showing that Kennedy was entitled to the relief sought in the Complaint. (*See* D.I. 12 at 48-50). According to Defendants, the Bankruptcy Court also correctly dismissed all causes of action in the Complaint, which were time-barred under any potentially applicable statute of limitations, and correctly determined that equitable tolling did not apply because (i) any allegations that Skadden concealed payments or material adverse conflicts are contrary to the Bankruptcy Court's findings, and (ii) because Kennedy was on notice of the facts and circumstances underlying his putative claims even before the sale transaction was approved in 2006. (*See* D.I. 12 at 25-28; D.I. 14 at 21-23). Defendants further argue that the Bankruptcy Court was correct in applying the doctrines of law of the case, *res judicata*, and collateral estoppel in dismissing the Complaint, as the core allegations of

13

concealment and misconduct have been litigated and rejected by prior orders of the Bankruptcy Court. (*See* D.I. 12 at 29-37; D.I. 14 at 23-26). Finally, Defendants dispute Kennedy's standing as the claims in the Complaint are derivative and may be asserted, if at all, only by the trustee appointed pursuant to the terms of the plan. (*See* D.I. 12 at 37-40; D.I. 14 at 26-28).

Defendants argue the Court may affirm the Dismissal Order on several additional grounds.[11] Defendants argue that the Complaint is barred by the plan and releases contained in the Sale Order.[12] (*See* D.I. 12 at 43-45; D.I. 14 at 28-30). The Tennenbaum Defendants argue that because the Complaint was barred by the Confirmation Order, the Complaint constitutes a collateral attack on the Confirmation Order. (*See* D.I. 14 at 29-30). The Skadden Defendants contend that Kennedy failed to appeal the Bankruptcy Court's dismissal of the Complaint as a sanction, and that the Court may affirm the Dismissal Order on this basis alone. (*See* D.I. 12 at 3).

## IV.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). On appeal from an order issued by the Bankruptcy Court, a district court "review[s] the Bankruptcy Court's factual findings under a clearly erroneous standard and exercise[s] plenary review over legal issues." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998) (noting that both the district court and the Third Circuit "review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof."). Thus, the Court reviews *de novo* the

---

[11] *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2005) ("[The Third Circuit] may affirm the District Court on any grounds supported by the record."); *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 761 n.1 (3d Cir. 2004) ("An appellate court may affirm a result reached by the district court if the record supports the judgment.").

[12] In connection with the sale, the Bankruptcy Court approved a release in favor of Tennenbaum, barring claims relating to events predating the sale. (*See* B.D.I. 698, Ex. A at § 12.11).

14

Bankruptcy Court's application of statute of limitations and claim preclusion doctrines, but need not reexamine findings or conclusions determined in the prior proceedings that are not part of the instant appeal because "there is no further fact-finding function for a court to perform. *See Tice v. Bristol Myers Squibb Co.*, 515 F. Supp. 2d 580, 590 (W.D. Pa. 2007) (quoting *Parklane Hosiery v. Shore*, 439 U.S. 322, 336 (1979)). A dismissal for lack of standing is a "purely legal question" also subject to *de novo* review. *In re Yes! Entm't Corp.*, 316 B.R. 141, 144 (D. Del. 2004); *In re Global Indus. Tech., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011).

## V. DISCUSSION

The Complaint is 327 paragraphs long and includes ten separate causes of action, including breach of fiduciary duties, fraud, conspiracy to commit fraud, malpractice, perjury, unjust enrichment, obstruction of justice, breach of contract, tortious interference, and theft by deception. The Complaint's allegations may be summarized as follows. Tennenbaum was an important Skadden client (*see* Adv. D.I. 6 at ¶¶ 37, 226). Skadden did not disclose the relationship with Tennenbaum to Kennedy, Radnor's board, or the Bankruptcy Court (*id.* at ¶¶ 100, 107-109, 116, 144, 218, 239, 281). Tennenbaum directed Radnor to retain Skadden (*id.* at ¶ 112). Tennenbaum and Skadden conspired to achieve Tennenbaum's goals in the chapter 11 cases (*id.* at ¶¶ 202, 219, 228, 230, 247, 281). Skadden represented Tennenbaum's interests in the chapter 11 cases (*id.* at ¶¶ 164, 281). Skadden orchestrated the sale of Radnor's assets to Tennenbaum (*id.* at ¶¶ 156, 169). Skadden thwarted Kennedy's and Radnor's efforts to reorganize Radnor (*id.* at ¶¶ 137, 152-54, 166, 171, 183, 185, 216, 281).

### A. The Bankruptcy Court Properly Dismissed the Complaint as Time-Barred Because Equitable Tolling Does Not Apply

The Bankruptcy Court determined that, while several statutes of limitations might apply to Kennedy's claims, under any potentially applicable statute of limitations, all of the causes of action asserted in the Complaint were time-barred. (*See* Adv. D.I. 121 at 9). The Complaint

15

alleges wrongdoing predating and culminating in Radnor's sale to Tennenbaum. The Bankruptcy Court found that Kennedy was on notice of Skadden's relationship with Tennenbaum and the basic allegations underlying the Complaint by at least the November 21, 2006 sale hearing, more than six years before Kennedy filed his original complaint on December 26, 2012. (*See id.*). As set forth in the Dismissal Order, none of the statutes of limitations reach as far back as six years.[13] Kennedy does not dispute that his claims were untimely. Rather, Kennedy argues that any statute of limitations was equitably tolled by Defendants' "concealment of material and adverse facts" – namely, their alleged concealment of fee payments and conflicts of interest – which Kennedy only just discovered in 2012. (*See* D.I. 10 at 18-20).

According to Defendants, Kennedy does not dispute (and therefore concedes) that all of his claims are untimely, and the only challenge on appeal is whether dismissal of the Complaint was in error because his claims should have been saved by the "equitable tolling" doctrine. (*See* D.I. 12 at 24-25). Defendants argue that Kennedy failed to establish any fraud or concealment which could predicate equitable tolling. Even if Kennedy had carried his burden to establish that equitable tolling applies, Defendants argue that equitable tolling extends only until a person is put on "inquiry notice," and Kennedy had actual knowledge of Skadden's relationship with Tennenbaum prior to the bankruptcy filing in 2006. (*See id.* at 26-27; D.I. 14 at 21-23).

A plaintiff bears the burden of establishing that equitable tolling applies. *See Graulich v. Dell Inc.*, 2011 WL 1843813, at *6 (Del. Ch. May 16, 2011). Kennedy argues that Defendants "knowingly concealed $10 million in fee payments to Radnor legal and financial advisors;" and "concealed Skadden's ownership of Radnor stocks and bonds." (D.I. 10 at 19). Kennedy argues

---

[13] *See* Adv. D.I. 121 at 6-9 (listing each potentially applicable statute of limitations). Skadden's representation of the Debtors was governed by New York law under the engagement agreement; the Debtors were headquartered in Pennsylvania; and the chapter 11 cases were filed in Delaware.

that this intentional concealment is evidenced by testimony at the evidentiary hearing held on

May 1, 2013, and is sufficient to equitably toll the statute of limitations. Defendants argue that

Kennedy's allegations of concealment cannot survive the Bankruptcy Court's specific findings to

the contrary that Defendants did not engage in any misconduct (much less fraudulent

concealment of misconduct). In two final orders, the Bankruptcy Court has determined that no

concealment occurred. *See Radnor*, 2013 WL 3228116, at \*9 (finding no concealment or

conspiracy and that Skadden's retention disclosures were sufficient); B.D.I. 2151 at 11 ("[I]t is

the law of the case that: [t]he Skadden Retention Order resolved Skadden's purported conflict of

interest and failure to disclose"); *see id.* at 4 (rejecting Kennedy's argument that the Bankruptcy

Court had failed to consider evidence of non-disclosures).

The Court has reviewed the record and finds no plausible support for Kennedy's

allegations that Defendants concealed fees or conflicts of interest. With respect to Skadden's

relationship to Tennenbaum, many public disclosures were made, it was a contested matter, and

an evidentiary hearing was held. The Bankruptcy Court found no disabling conflicts, and

Kennedy's assertions that he was unaware of Skadden's representation of Tennenbaum in

unrelated matters were belied by his communications before Skadden's retention.[14] With respect

to fees, Kennedy provides no support for his repeated allegations that Defendants admitted to

concealing $10 million in fees at the May 2013 evidentiary hearings. (*See e.g.,* D.I. 10 at 5).

The Court has reviewed the transcripts of those hearings and finds no support for this allegation.

---

[14] *See* May 30, 2006 email from Kennedy to Feliciano, in which Kennedy states:
> I understand that Skadden has represented [Tennenbaum Capital Partners] in other
> unrelated matters in the past and Skadden does not consider them a conflict, however I
> want to make certain that you would not have a problem with Skadden representing the
> company if the board chooses them during our process. Please confirm via email so I can
> reaffirm with Skadden and the other board members before our meeting tomorrow.

*Radnor*, 2013 WL 3228116 at \*6 (quoting email).

(*See* B.D.I. 2053, 2063).[15]  Kennedy's repeated allegations that Skadden concealed its partners' investment in Tennenbaum funds are also belied by the record, as this disclosure was made to the Bankruptcy Court prior to its approval of Skadden's retention and in subsequent filings.  (*See* B.D.I. 298, 9/20/2006 Hr'g. Tr. at 36-37; *see also* B.D.I. 2016 (disclosing that, in 2004, 39 shares of a Tennenbaum affiliate were purchased by 23 Skadden partners and their spouses at \$500 per share, for an aggregate of \$19,500, and that these were individual personal investments as to which Skadden itself was not a party).  Kennedy's allegations that Skadden concealed or misrepresented its relationship with Tennenbaum are flatly contradicted by the record in this case, and there is no basis for equitable tolling.

Even if Kennedy had carried his burden of establishing concealment, equitable tolling would extend only until Kennedy was put on inquiry notice.  *See Graulich*, 2011 WL 1843813, at \*6.  A "plaintiff is on inquiry notice when the information underlying plaintiff's claim is readily available."  *See In re Dean Witter P'ship Litig.*, No. 14816-VCC, 1998 WL 442456, at \*8 (Del. Ch. July 17, 1998); *see also In re AMC Investors, LLC*, 524 B.R. 62, 80-81 (Bankr. D. Del. 2015) (quoting *Vichi v. Koninklijke Phillips Electronics N.V.*, 2009 WL 4345724, at \*17 (Del. Ch. 2009) (statute begins to run "upon the discovery of facts constituting the basis for the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts.")  Here, the Bankruptcy Court previously determined Kennedy had *actual knowledge* of Skadden's relationship with Tennenbaum before the chapter 11 cases began.  (*See Radnor*, 2013 WL 3228116, at \*4

---

[15] The source of Kennedy's \$10 million fee allegation is unclear.  At the May 1 and 2, 2013 evidentiary hearing, Kennedy attempted to offer into evidence certain public filings as evidence that Skadden received \$3 million in fees from Tennenbaum for work performed in 2004 and 2005 and that Lehman, which served as Radnor's investment banker, received \$7 million in fees from Tennenbaum prior to the bankruptcy proceedings. The Bankruptcy Court reviewed the documents but did not agree with Kennedy's interpretation.  (*See* B.D.I. 2063 at 24-25).

("Skadden's pre-existing attorney client relationship with Tennenbaum was disclosed and known

to Kennedy ... when Skadden was retained prepetition ...")).  Kennedy fares no better in

contending that he did not become aware of the conduct underlying his claims until 2012, upon

reviewing transcripts from bankruptcy proceedings held in 2006.  (*See* Adv. D.I. 6 at ¶ 209

(describing the Skadden retention hearing transcripts)).  Even if this were not contrary to his own

prior pleadings[16] and the Bankruptcy Court's factual findings,[17] the information from which

Kennedy discovered his alleged claims was publicly available no later than the hearing October

27, 2006.  *See Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996) (tolling did not apply because

the "public documents, which form the basis of many of Plaintiff's claims, could have provided

Plaintiff with adequate notice of any alleged misconduct by Defendants.").  The Court finds no

error in the Bankruptcy Court's determination that the claims in the Complaint were barred by

statutes of limitations and that Kennedy failed to establish a basis for equitable tolling.  The

Dismissal Order may be affirmed on this basis alone.

## B.    The Bankruptcy Court Correctly Applied Preclusive Doctrines

The doctrines of law of the case, claim preclusion, and issue preclusion bar litigation of

claims or issues that a court has already adjudicated.  The Court finds that the Bankruptcy

Court's prior rulings satisfy all three doctrines and bar the Complaint.

**Law of the case**.  The Court finds no error in the Bankruptcy Court's determination that

---

[16] *See* Complaint at ¶ 207 (alleging Kennedy learned of conflict in February 2008); *see also* B.D.I. 1993 at ¶ 10 ("the true nature of the conflicts of the Debtors' professionals in this case were discovered shortly after a meeting between Mr. Kennedy and Attorneys Patricia Moran and Ralph Arditi, of Skadden Arps in Skadden's New York offices on November 18, 2008").

[17] The Bankruptcy Court has previously determined that Kennedy had *actual knowledge* of Skadden's relationship with the Tennenbaum before the chapter 11 cases were filed in 2006 (*Radnor*, 2013 WL 3228116, at *4), and knew of the relationship no later than the sale hearing on November 21, 2006, more than six years before Kennedy filed his original complaint (B.D.I. 2151 at 10).

the law of the case doctrine required dismissal of the Complaint. This doctrine bars re-litigation "of matters once decided during the course of a single continuing lawsuit." *Casey v. Planned Parenthood*, 14 F.3d 848, 856 (3d Cir. 1994). The doctrine applies to "subsequent rulings by the same judge in the same case or a closely related one [and] to rulings by different judges at the same level." *Id.* at 856 n.11. The doctrine mandates that "when a court decides a rule of law, that rule of law should continue to govern the same issues in subsequent stages in the litigation." *See In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991). Defendants argue that the Bankruptcy Court's decision in the Final Fee Order "resolved and rejected all allegations of wrongdoing by and between Tennenbaum and Skadden." (B.D.I. 2151 at 11.) The Bankruptcy Court has twice held that this ruling is the law of the case, and Defendants argue that it should remain so. (*See* D.I. 14 at 23).

Kennedy argues that the law of the case doctrine should not apply because there was a lack of proper fact finding on new issues in the prior proceedings. (*See* D.I. 10 at 23). However, the new issues Kennedy alleges – Defendants' alleged concealment from Kennedy and Radnor of fees and investment in Tennenbaum funds – were already litigated and rejected following the two-day evidentiary hearing. *See* Adv. D.I. 121 at 10 (finding that the Final Fee Order "addressed all of the points Kennedy made in the Complaint."); *Radnor*, 2013 WL 3228116, at *4 (finding Skadden made adequate disclosures regarding Tennenbaum to Kennedy, the Debtors, its board, and general counsel); *id.* at *3 (finding Skadden disclosed the fact that certain Skadden partners invested in Tennenbaum funds over which they had no investment authority).

The Court agrees that the law of the case doctrine precludes Kennedy from re-litigating issues previously decided by the Bankruptcy Court. *See In re DuFrayne*, 194 B.R. 354, 358 (E.D. Pa. 1996") ("the factual findings made in the [main bankruptcy case opinion denying confirmation] are the law of the case and are therefore binding on the parties in this [adversary]

20

proceeding."). Allowing any of the causes of action in the Complaint to go forward would necessarily require re-litigation of issues previously decided after thorough evidentiary hearings conducted by the Bankruptcy Court.

**Claim preclusion.** The Court finds no error in the Bankruptcy Court's determination that the doctrine of claim preclusion or *res judicata* also required dismissal of the Complaint. The elements of claim preclusion are (i) a final judgment on the merits in a prior suit, involving (ii) the same parties or their privies, and (iii) a subsequent suit on the same cause of action. *See Shanin v. Darling*, 606 F. Supp. 2d 525, 545 (D. Del. 2009). Here, the merits of Kennedy's claims of concealment and misconduct were decided in the Final Fee Order, which is a final judgment that has been affirmed by the Third Circuit. Defendants argue claim preclusion clearly applies because that litigation involved the same parties, and adjudicated identical allegations. (*See* D.I. 14 at 24). The Court agrees. A suit is based on the "same cause of action" if it is based on the same "underlying events giving rise to the ... claims." *CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187, 194 (3d Cir. 1999). The Complaint and the Objection to Skadden's final fee application were based on identical allegations, and the Final Fee Order adjudicated those allegations. Thus, claim preclusion barred re-litigation of the allegations and required dismissal of the Complaint.

**Issue preclusion.** The Court finds no error in the Bankruptcy Court's conclusion that the doctrines of issue preclusion or collateral estoppel also required dismissal of the Complaint. Issue preclusion applies where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action." *See Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001) (quoting *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995)). Defendants argue the issue preclusion doctrine

21

clearly applies with respect to the Final Fee Order. (*See* D.I. 12 at 35; D.I. 1 at 24). The Court

agrees. The Bankruptcy Court had previously adjudicated issues identical to the core allegations

in the Complaint: (1) the issue of Skadden's alleged conflict of interest in the Final Fee Order,

and (2) the issue of Tennenbaum's alleged wrongdoing in the Final Fee Order and Tennenbaum

Judgment. (*See* D.I. 12 at 35-37). In both cases, the issues were actually litigated in contested

evidentiary hearings, and a determination on those issues was necessary to approving the relief

sought.

Kennedy argues the Bankruptcy Court's rulings on prior contested matters, including the

Bankruptcy Court's orders approving Skadden's retention, the asset sale, and adjudicating the

Tennenbaum Judgment – should not have *res judicata* or collateral estoppel effect because he

was not party to those proceedings and did not have the opportunity to fully litigate the issues.

(*See* D.I. 10 at 20-23). Although Kennedy was not personally party to those proceedings, his

privy – Radnor – was a party to those proceedings. *See Radovich v. L.P. YA Global Invs., L.P.*,

570 F. App'x 203, 207-08 (3d Cir. 2014) (finding a debtor's chairman and majority shareholder

– like Kennedy – stood in privity with the debtor for *res judicata* purposes, and could not re-

litigate claims already litigated by the debtor). Kennedy's essential allegations and issues in the

Complaint were actually and fully litigated in the Bankruptcy Court. (*See* B.D.I. 2151 at 8 ("As

the basis for his motion [to set aside the Sale Order], [Fee O]bjection, and [C]omplaint, Mr.

Kennedy alleged that Tennenbaum and Skadden failed to disclose conflicts of interest to the

Court. He also alleged that Tennenbaum and Skadden collaborated to manipulate the Debtors'

restructuring in Tennenbaum's favor. These are the same allegations that he is once again

raising in the [Motion to Vacate].") The Bankruptcy Court properly precluded re-litigation of

the issues and claims in dismissing the Complaint.

### C. The Bankruptcy Court Properly Dismissed the Complaint Based on Kennedy's Lack of Standing

The Bankruptcy Court held that Kennedy lacked standing to bring any of the claims in the Complaint because all of the claims he asserts are derivative. (*See* Adv. D.I. 121 at 11 (citing *Tooley v. Donaldon, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2006)). On appeal, Kennedy appears to misunderstand the Bankruptcy Court's ruling, arguing that dismissal for lack of standing was error because he is a party in interest and meets the minimal constitutional standing requirement under Article III. (*See* D.I. 10 at 24). Defendants argue that dismissal on the basis of standing was indeed correct, for even if the Complaint states a viable claim, any such claim belongs to Radnor, and Kennedy lacks authority to assert it. (*See* D.I. 12 at 37-38; D.I. 14 at 26-28).

Under Delaware law, the test for determining whether a claim is derivative or direct is the following: "[l]ooking at the body of the complaint and considering the nature of relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?" *See Tooley*, 845 A.2d at 1036. The Bankruptcy Court concluded that Kennedy cannot prevail on his causes of action without showing injury to Radnor, and the Court agrees. The Complaint alleges that as a result of Defendants' misconduct, Radnor was sold to Tennenbaum at a reduced sale price while Radnor could have restructured more favorably. This is an injury to Radnor, and Kennedy is affected *through* Radnor, by virtue of his ownership of equity. *See Moore v. Martillo (In re CD Liquidation Co.)*, 462 B.R. 124, 132 (Bankr. D. Del. 2011) ("[plaintiff's] claim that [the transaction] devalued his shares is a classic derivative claim. It flows from harm to the corporation.") Radnor would be the only proper plaintiff to assert such derivative claims. Although Kennedy also purports to bring the claims on behalf of Radnor as a plaintiff, as well as on behalf of four family trusts, he has no authority to pursue such claims. Only the plan trustee

23

may assert claims on Radnor's behalf,[18] and Kennedy may not represent entities *pro se*.[19]

Alternatively, Kennedy argues that certain provisions of Delaware state law permit shareholders to petition the Delaware Court of Chancery for appointment of a trustee to bring claims. (*See id.* at 24-25). Defendants point out that Kennedy is no longer a shareholder, as his shares were cancelled under the plan. (*See* D.I. 14 at 28). Moreover, Kennedy has never sought such relief from the Court of Chancery, and Defendants urge the Court not to consider it. (*See* D.I. 14 at 28). Defendants further argue that Kennedy cannot proceed *pro se* to bring derivative suits on behalf of shareholders. (*See* D.I. 12 at 38).

The Court agrees with Defendants. Sections 278 and 279 of Delaware General Corporation Law govern the process of corporate dissolution under Delaware state law, and the possible appointment of a trustee – by the Delaware Court of Chancery – following dissolution.[20] Section 278 merely preserves claims of a corporation dissolved under Delaware law, and it does not purport to create an independent basis for standing. Kennedy cites no authority for his argument that the Delaware Court of Chancery may appoint him to pursue derivative litigation on behalf of Radnor shareholders, notwithstanding the provisions of a confirmed plan of liquidation. Moreover, Kennedy may not represent the corporation or any other entity *pro se*. Any such representation would be contrary to controlling law. *See Delaware Elevator, Inc. v.*

---

[18] The plan provides that "[o]n the Effective Date, … all assets of the Debtors … shall be, and shall be deemed, assigned to the Plan Trust …" (*See* B.D.I. 1976, Ex. A at 24). The plan further provides that "[t]he Plan Trustee," as trustee of the Plan trust, "shall liquidate … assets of the Debtors and the Estates (including, without limitation, all Causes of Action)." (*See id.*)

[19] *See Rowland v. Cal. Men's Colony,* 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities.") (citations omitted); *Marin v. Leslie,* 337 F. App'x 217, 219-20 (3d Cir. 2009) (trustee may not proceed *pro se* to represent trusts).

[20] *See* 8 Del. C. §§ 278 and 279.

24

*Williams*, 2011 WL 1005181, at *1 (Del. Ch. Mar. 16, 2011) (holding that plaintiff may only represent himself and may not represent any entities in a *pro se* capacity.) Because Kennedy lacks standing and authority to pursue the claims asserted in the Complaint, the Dismissal Order must be affirmed on this basis as well.

### D. Kennedy's Constitutional Arguments Lack Merit

**Authority to dismiss the Complaint.** Kennedy contends that the Bankruptcy Court, as a non-Article III court, lacked authority to dismiss his Complaint because it contained non-core claims, and Kennedy never consented to the Bankruptcy Court's final adjudication of the Complaint. (*See* D.I. 10 at 12-17). Kennedy argues his claims are non-core, citing *Halper*:

> To determine whether a proceeding is a "core" proceeding, courts of this Circuit must consult two sources. First, a court must consult § 157(b). Although § 157(b) does not precisely define "core" proceedings, it nonetheless provides an illustrative list of proceedings that may be considered "core." … Second, the court must apply this court's test for a "core" proceeding. Under that test, " 'a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.' "

*See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). Kennedy argues his claims are not included in section 157(b)'s list of core proceedings and are non-core because they are based on Defendants' prepetition concealment of fees and conflicts. Because the alleged concealment occurred prepetition, Kennedy reasons that his claims are not integral to the administration of the chapter 11 cases, do not invoke issues of bankruptcy law, and could by their nature arise outside of the bankruptcy proceedings. (*See id*. at 16). Defendants argue Kennedy's claims are core as they are based on Skadden's disclosures under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014, and its alleged collusion to manipulate the bankruptcy case and obtain a sale of assets under section 363 of the Bankruptcy Code. (*See* D.I. 14 at 19).

The Court agrees with the Bankruptcy Court's prior determination that the Complaint unequivocally addresses matters in the bankruptcy case, which include matters concerning the

administration of the estate. *See* 28 U.S.C. § 157(b)(2)(A); Adv. D.I. 87. As the Bankruptcy Court

determined, the claims in the Complaint are "primarily based on post-petition conduct *arising in*

the Bankruptcy Case and *arising under* the Bankruptcy Code and are therefore core." (*See id.*; *see*

*also In re McClelland*, 460 B.R. 397, 403-05 (Bankr. S.D.N.Y. 2011) (bankruptcy court had

jurisdiction over "a core proceeding, and … power to enter final order" in adversary proceeding

against estate professional notwithstanding *Stern v. Marshall*, 564 U.S. 462 (2011) and

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)). That Kennedy has asserted other causes

of action against estate professionals for fraud does not change the Court's view. *See In re Winstar*

*Commc'ns, Inc.*, 435 B.R. 33, 40-41 (Bankr. D. Del. 2010), *aff'd*, 2013 WL 6053838 (D. Del. Nov.

15, 2013) (holding that Bankruptcy Court had core jurisdiction over claims against bankruptcy

estate professionals including claims for fraud, aiding and abetting fraud, and civil conspiracy).

Defendants further argue that even if the Complaint contains non-core claims, it makes

no difference because the same standard of review applies. Whether a claim is core or non-core

does not affect a bankruptcy court's jurisdiction to hear a case, only its authority to enter a final

order. (*See* D.I. 14 at 19 (citing *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 253-54 (3d Cir.

2007) (distinguishing between a bankruptcy court's subject matter jurisdiction and its authority

to determine claims under 28 U.S.C. § 157)); 28 U.S.C. § 157(c) (bankruptcy court may render

proposed findings of fact and conclusions on non-core claims)). Defendants argue that courts in

this circuit recognize the bankruptcy court's authority to dismiss complaints containing non-core

claims. *See In re Tropicana Entm't, LLC*, 520 B.R. 455, 463 (Bankr. D. Del. 2014) ("[t]he

Bankruptcy Court … has the power to enter an order on a motion to dismiss even if the matter is

non-core or it has the no authority to enter an order on the merits."); *In re Advance Nanotech,*

*Inc.*, 2014 WL 1320145, at \*5 (Bankr. D. Del. Apr. 2, 2014) (same). Defendants argue that,

even assuming the Complaint contains non-core claims, and the Bankruptcy Court lacked

26

authority to dismiss them, the Dismissal Order would stand as a proposed order subject to *de novo* review – the same review the Court would apply if the Bankruptcy Court had authority and its ruling was rendered as a matter of law. (*See* D.I. 14 at 20-21 (citing *Amended Standing Order of Reference, D. Del.* (Feb. 29, 2012) ("If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III … [t]he district court may treat any order of the Bankruptcy Court as proposed findings of fact and conclusions of law."))). Whether characterized as a final order or proposed order, Defendants contend, the Court conducts the same review of the Dismissal Order.

The Court agrees that the Bankruptcy Court had authority to dismiss the Complaint and will affirm the Dismissal Order for the reasons set forth herein. In the alternative, assuming the Complaint contained non-core claims, and further assuming the Bankruptcy Court lacked authority to rule on the dispositive motion, the Court treats the Bankruptcy Court's Dismissal Order as proposed findings of fact and conclusions of law with respect to its dismissal of those claims, and adopts the Bankruptcy Court's proposed findings and conclusions for the reasons set forth herein.[21]

**Right to discovery**. Kennedy makes several additional constitutional arguments, including that the Dismissal Order was improper because it infringed on his rights under the Fifth, Seventh, and Fourteenth Amendments of the United States Constitution. (*See* D.I. 10 at 14-16). Specifically, Kennedy argues that his due process and property rights required both discovery and a jury trial prior to dismissal of his Complaint. (*See* D.I. 10 at 17).

---

[21] Defendants also argue that Kennedy consented to the Bankruptcy Court's adjudication because the Complaint states that the Bankruptcy Court "has jurisdiction and venue is proper." (*See* D.I. 12 at 46-47 (citing Adv. D.I. 1 at ¶¶ 21-22)). The Complaint speaks to jurisdiction, not adjudicatory authority, and "[a] document filed *pro se* is to be liberally construed." *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotations omitted). Kennedy's purported consent is contradicted by his courtroom statements. (*See* B.D.I. 2132, 9/22/2014 Hr'g. Tr. at 18-19).

First, Kennedy was not entitled to discovery where his claims could not survive Rule

12(b)(6)'s plausibility test. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]o survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."); *Townsend v. New Jersey Transit*, 516 F. App'x 110,

111 (3d Cir. 2013) (affirming dismissal under Rule 12(b)(6) where plaintiff "presented

allegations ... already litigated and decided.")  As discussed above, Kennedy's claims are time-

barred; precluded by prior findings, decisions, and rulings of the Bankruptcy Court; and asserted

without standing. "[T]he purpose of Rule 12(b)(6) is to streamline ... litigation by dispensing

with needless discovery and factfinding." *Clark v. Vernon*, 228 F. App'x 128, 132-33 (3d Cir.

2007) (internal quotation marks omitted).  Before a plaintiff is entitled to discovery, plaintiff

must "first produce a complaint that passes [Rule 12(b)(6)'s] plausibility test." *Schatz v.

Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012); *see also Mann v. Brenner*,

375 F. App'x 232, 239 (3d Cir. 2010) (appellant was not entitled to discovery prior to a Rule

12(b)(6) ruling because "a motion to dismiss ... tests the legal sufficiency of a claim, and

therefore may be decided on its face without extensive factual development"); *OSU Student

Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) ("when a plaintiff presses an implausible

claim, lack of access of evidence does not save the complaint.")  Because the Complaint fails to

state a claim, Kennedy's argument that he was entitled to discovery fails. (*See* D.I. 10 at 48).

**Right to a jury trial.**  Kennedy's argument that he was entitled to a jury trial prior to

dismissal also fails. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S.Ct. 1293, 1304

(2015) ("As to the Seventh Amendment, ... [the Supreme Court] has already held that the right

to a jury trial does not negate the issue-preclusive effect of a judgment, even if that judgment was

entered by a jury-less tribunal."); *McArdle v. Verizon Commc'ns Inc.*, 567 F. App'x 116, 119 (3d

Cir. 2014) (Where ... a district court concludes as a matter of law that plaintiff cannot succeed

on his claim, the district court's legal determination does not invade the province of the jury and, therefore, does not violate his Seventh Amendment rights."); *Clark v. Zeiger*, 210 F. App'x 612 (9th Cir. 2006) (finding that "the Rule 12(b)(6) dismissal of a plaintiff's complaint … did not violate his right to a jury trial under the Seventh Amendment); *Boyd v. King Par, LLC*, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) (court may rule on pre-trial dispositive motion despite jury trial rights). Where, as here, the Complaint failed to state an actionable claim, the Seventh Amendment is not implicated, and Kennedy has no right to a jury trial. *See Raul v. American Stock Exchange*, 1996 WL 627574, at *2 (S.D.N.Y. 1996) ("In dismissing plaintiff's complaints … [the] court ruled as a matter of law that plaintiff had failed to state an actionable claim against either defendant. Thus plaintiff never fell within the aegis of the Seventh Amendment, and was never entitled to a jury trial.")

### E.     Sanctions

Skadden Defendants contend that the Bankruptcy Court dismissed the Complaint as a sanction against Kennedy under Bankruptcy Rule 9011, and that the sanction was an independent basis for dismissal. (*See* D.I. 12 at 5). Defendants argue that Kennedy did not dispute the imposition of this sanction in his opening brief, that any such argument is waived, and that the Dismissal Order may be affirmed on this basis alone. (*See id.*) The Court does not agree that the sanction granted in the Dismissal Order included dismissal of the Complaint. This relief appears separate from, and supplemental to, the Complaint's dismissal. Although the Bankruptcy Court found that Kennedy had "litigated beyond reason," and that his conduct was sanctionable, the Bankruptcy Court denied Skadden's request to impose the fees and expenses, concluding that "barring Kennedy from further filings without the [Bankruptcy Court]'s permission will suffice as an appropriate sanction." (*See* Adv. D.I. 121 at 12). As the sanction does not clearly include dismissal, the Court does not find that the Dismissal Order may be affirmed on this basis.

## VI.  CONCLUSION

For the foregoing reasons, the Dismissal Order is affirmed.  An appropriate order shall issue.